

1  CUMMINS & WHITE, LLP
   Larry M. Arnold, P.C. (Bar No. 060459)
2  E-mail:  larnold@cwlawyers.com
   Annabelle M. Harris (Bar No. 132290)
3  E-mail:  aharris@cwlawyers.com
   2424 S.E. Bristol Street, Suite 300
4  Newport Beach, CA 92660-0764
   Telephone: (949) 852-1800
5  Facsimile: (949) 852-8510

6  Attorneys for Defendant
   GREAT AMERICAN INSURANCE
7  COMPANY OF NEW YORK, a
   New York corporation
8



9
10                    UNITED STATES DISTRICT COURT
11                    CENTRAL DISTRICT OF CALIFORNIA
12                        LOS ANGELES DIVISION
13

14  C.R. OPERATING COMPANY, INC., a )   CASE NO.: **CV12-3728** 
    business entity; LINCOLN PLAZA    )
15  OFFICE BUILDING, LLC, an          )   **NOTICE OF REMOVAL**
    Oklahoma limited liability company, )
16                                     )
17            Plaintiffs,              )
                                       )
18      vs.                            )
                                       )
19  GREAT AMERICAN INSURANCE           )
    COMPANY OF NEW YORK, a New         )
20  York corporation; GREAT AMERICAN   )
    INSURANCE COMPANY, an Ohio         )
21  corporation; and DOES 1 through 100, )
    inclusive,                         )
22                                     )
            Defendants.                )
23                                     )

24      TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL

25  PARTIES AND THEIR ATTORNEYS OF RECORD:

26      PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§1332, 1441 and 1446,

27  Defendants  GREAT  AMERICAN  INSURANCE  COMPANY  and  GREAT

28  AMERICAN INSURANCE COMPANY OF NEW YORK (collectively "Great

-1-

American") will remove to this Court the state court action described below. This Court's jurisdiction is based upon 28 U.S.C. §1332. The underlying dispute is between the citizens of different states and the matter in controversy exceeds the sum of $75,000.00.

1.  On March 23, 2012, CR Operating Company, Inc. and Lincoln Plaza Office Building, LLC ("Plaintiffs") filed a complaint in the Superior Court of the State of California, County of Los Angeles, Central District, entitled *CR Operating Company, Inc. and Lincoln Plaza Office Building, LLC v. Great American Insurance Company of New York and Great American Insurance Company*, Los Angeles Superior Court No. BC481492 (the "state court action.")

2.  A copy of all pleadings filed in the state court action is attached as Exhibit "A." Exhibit "A" includes all process, pleadings, and orders served upon Great American as required by 28 U.S.C. §1446(a).

3.  Great American Insurance Company was served on March 30, 2012 by personal service.

4.  This Notice of Removal is being filed within 30 days of service of the summons and complaint on Great American and is timely in accordance with 28 U.S.C. §1446(b).

5.  A copy of this Notice of Removal is being served on all parties and filed with the clerk of the state court pursuant to 28 U.S.C. §1446(d). A copy of the notice to all adverse parties and the state court is attached (without exhibits) as Exhibit "B."

6.  This is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1332. This action may be removed to this Court pursuant to the provisions of 28 U.S.C. §§1441 and 1332 because it is a civil action between citizens of different states and the matter in controversy exceeds $75,000.

## DIVERSITY OF PARTIES

7.  Complete diversity of citizenship exists between the parties.

-2-

[T331|847481.DOCX;1]

1        8.     For diversity purposes, a corporate party to this action is deemed to be a

2 citizen of the state by which it has been incorporated and the state where it has its

3 principal place of business.  28 U.S.C.  §1332(c)(1).

4        9.     Great American is informed and believes that at the time of filing, and at

5 present, Plaintiff C.R. Operating Company, Inc. was and is a Texas Corporation with

6 its principal place of business and headquarters in Agoura Hills, California.

7      10.    Great American is informed and believes that at the time of filing, and at

8 present, Plaintiff Lincoln Plaza Office Building, LLC was and is an Oklahoma

9 Corporation and is wholly owned by C.R. Operating Company, Inc. consisting of a

10 commercial real property located in Oklahoma City, Oklahoma.

11      11.    Defendant Great American Insurance Company of New York is a New

12 York corporation with its principal place of business in Cincinnati, Ohio.

13      12.    Defendant Great American Insurance Company is an Ohio corporation

14 with its principal place of business in Cincinnati, Ohio.

### AMOUNT IN CONTROVERSY

17      13.    This is a civil action where the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs.

Dated:  April 30, 2012           CUMMINS & WHITE, LLP

By: _____
     Larry M. Arnold, P.C.
     Annabelle M. Harris
     Attorneys for Defendant
     GREAT AMERICAN INSURANCE
     COMPANY OF NEW YORK and
     GREAT AMERICAN INSURANCE
     COMPANY

[T331|847481.DOCX;1]

# Exhibit A

3/30  2:18

**SUMMONS**

**(CITACION JUDICIAL)**

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, a New York Corporation;
GREAT AMERICAN INSURANCE COMPANY, an Ohio Corporation; and
DOES 1 through 100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
C.R. OPERATING COMPANY, INC., a business entity; LINCOLN PLAZA OFFICE
BUILDING, LLC, an Oklahoma Limited Liability Company

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 23 2012

John A. Clarke, Executive Officer/Clerk

_____, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court<br>111 N. Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):*<br>**BC 481 492** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William F. Merlin, Esq.   (SBN 275936)        Merlin Law Group
Denise H. Sze, Esq.       (SBN 238511)        1800 Century Park East, Suite 600
(310) 229-5960                                Los Angeles, CA 90067

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* | JOHN A. CLARKE, CLERK<br>Clerk, by<br>*(Secretario)* | Mary Flores, Deputy<br>*(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

   GREAT AMERICAN INSURANCE COMPANY, AN OHIO CORPORATION

3. ☒ on behalf of *(specify):*

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

C.R. OPERATING CO. v. GREAT

1  WILLIAM F. MERLIN [SBN 275936]
   DENISE H. SZE [SBN 238511]
2  [dsze@merlinlawgroup.com]
   MERLIN LAW GROUP
3  1800 Century Park East, Suite 600
   Los Angeles, California 90067
4  Telephone:    (310) 229-5961
   Fax:          (310) 229-5763
5
   *Attorneys for Plaintiffs*
6  C.R. OPERATING COMPANY, INC. and
   LINCOLN PLAZA OFFICE BUILDING, LLC
7

8
              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
        FOR THE COUNTY OF LOS ANGELES- UNLIMITED JURISDICTION
10
                          CENTRAL DISTRICT
11

12
   C.R. OPERATING COMPANY, INC., a      )  Case No.
13 business entity; LINCOLN PLAZA       )
   OFFICE BUILDING, LLC, an Oklahoma    )
14 Limited Liability Company;           )
                                        )  COMPLAINT FOR:
15              Plaintiffs,             )
                                        )  (1)    BREACH OF CONTRACT;
16        v.                            )  (2)    BREACH OF THE IMPLIED
                                        )         COVENANT OF GOOD FAITH
17 GREAT AMERICAN INSURANCE             )         AND FAIR DEALING;
   COMPANY OF NEW YORK, a New York      )  (3)    UNFAIR COMPETITION UNDER
18 Corporation; GREAT AMERICAN          )         BUSINESS AND PROFESSIONS
   INSURANCE COMPANY, an Ohio           )         CODE § 17200 *et seq.*;
19 Corporation; and DOES 1 through 100, )
   Inclusive;                           )
20                                      )  JURY TRIAL DEMANDED
                Defendants.            )
21 _____)  UNLIMITED JURISDICTION

22

23

24        COMES NOW, PLAINTIFFS, who alleges for their Complaint as follows:

25 ///

26 ///

27 ///

28 ///

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 23 2012

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
        Mary Flores

BC 4 8 1 4 9 2

## NATURE OF THE CASE

1.     This is an insurance bad faith case brought by a policyholder against Defendant GREAT AMERICAN INSURANCE COMPANY OF NEW YORK and Defendant GREAT AMERICAN INSURANCE COMPANY (hereinafter collectively "GREAT AMERICAN"). The Plaintiffs seek damages stemming from GREAT AMERICAN's bad faith underpayment and low-balling of valid claims resulting from wind driven hail and rain damages sustained on or about May 15-16, 2010 at the property known as Lincoln Plaza Office Building which is an investment property owned by C.R. Operating Company, Inc.

2.     In or about 2008 or 2009, Plaintiff C.R. OPERATING COMPANY, INC. (hereinafter "C.R.") purchased a fully rented and profitable commercial building known as Lincoln Plaza Office Building in Oklahoma.  This commercial building was held as a limited liability company under the name of LINCOLN PLAZA OFFICE BUILDING, LLC (hereinafter LINCOLN PLAZA").

3.     Plaintiffs C.R. and LINCOLN PLAZA, through their broker, sought out insurance coverage amongst many insurers, settling on GREAT AMERICAN who gained Plaintiffs' business through a representation that GREAT AMERICAN would provide expedient and proper mitigation in the event of a loss, along with fair payment of business income losses in a prompt and reasonable manner.  Plaintiffs, depending on such reputation and representations of GREAT AMERICAN, purchased a policy with Defendants.  On or about November 1, 2009, Defendants GREAT AMERICAN underwrote and issued an insurance "Select Business Policy" number "MAC 8182948" naming C.R. and LINCOLN PLAZA as insureds.  (A true and correct copy of the policy is attached hereto and incorporated by reference as Exhibit "1".)  This insurance policy was to cover all  business income losses and other covered damages.

4.     LINCOLN PLAZA was a profitable investment for Plaintiff C.R. in that the building was not only at 100% rental capacity, but the building was such a good rental location, that there was a waiting list to get into the building.  LINCOLN PLAZA's commercial property

///

1  contained reliable and stable tenants which were comprised mostly of governmental entities and
2  departments for the City of Oklahoma and the State of Oklahoma.

3       5.    In May 2010, Oklahoma City was pummeled with relentless hail, wind and
4  rainstorms.  On or about May 15-16, 2010, the roof of LINCOLN PLAZA became
5  compromised by the heavy hail and wind driven rain and partially collapsed, causing leaks and
6  damage to the building's interior with major flooding.  C.R. attempted to mitigate the damages
7  at LINCOLN PLAZA with the threat of future heavy rain in the forecast.  Experienced
8  contractors, roofers and remediation companies were immediately called to the site of
9  LINCOLN PLAZA and requested that Defendants GREAT AMERICAN properly mitigate the
10  damage through the prevention of additional flooding by the application of a duralast sealant.
11  GREAT AMERICAN refused to provide proper remediation measures, allowing the LINCOLN
12  PLAZA property to sustain additional damages causing essentially a total loss/re-build for
13  Plaintiffs. · Defendants GREAT AMERICAN has continually delayed the reasonable and proper
14  payout of Plaintiffs' damages under the policy.  To date, Plaintiffs are not made whole under the
15  policy.

16       6.    Plaintiffs lost all tenants due to Defendants' unreasonable conduct for failure to
17  allow the appropriate remediation.  Plaintiffs suffer additional business interruption losses as the
18  building is now almost vacant.  Plaintiffs never prohibited Defendants, GREAT AMERICAN,
19  their agents and alter egos from conducting any inspections of the insured property after the
20  insurance claim had been submitted.  Multiple inspections were completed by GREAT
21  AMERICAN during its claim investigation.

22       7.    Plaintiffs at all times herein fully cooperated with Defendants, GREAT
23  AMERICAN, their agents and alter egos with its claims investigation.

24       8.    Plaintiffs never prohibited Defendants, GREAT AMERICAN, their agents and
25  alter egos from conducting any inspections of their books and records.

26       9.    Plaintiffs complied with all policy conditions, accommodating all request from
27  Defendants, GREAT AMERICAN, including but not limited to providing a comprehensive
28  proof of loss, sitting for an EUO, providing documents, inspections, and sitting for appraisal.

1   10. Despite timely notice of the claim, GREAT AMERICAN INSURANCE, along

2 with its agents and representatives failed and/or refused to investigate the claim in good faith

3 and thus breached their duties to do so.  Furthermore, Defendants have wrongfully low-balled

4 and denied full payment to Plaintiffs' claim despite the fact that Plaintiffs complied with all

5 contractual obligations necessary and the obvious coverage for the loss pursuant to the terms

6 and conditions of the insurance contract.  Defendants GREAT AMERICAN have not complied

7 with their representations in the insurance industry and market to provide reasonable adjusting,

8 prompt and fair  payment of a covered loss.

9

10         **PARTIES**

11   11. Plaintiff C.R. OPERATING COMPANY, INC., is a Texas Corporation with its

12 principal place of business and headquarters in Agoura Hills, California.

13   12. Plaintiff, LINCOLN PLAZA OFFICE BUILDING, LLC., is an Oklahoma

14 Corporation and wholly owned company of C.R. OPERATING COMPANY, INC. consisting of

15 a commercial real property located in Oklahoma City, Oklahoma.

16   13. Upon information and belief, Defendant, GREAT AMERICAN INSURANCE

17 COMPANY OF NEW YORK, is a New York corporation, with its principal business offices in

18 Cincinnati, Ohio and licensed and authorized to engage in the business of insurance with

19 California owned businesses.

20   14. Upon information and belief, Defendant, GREAT AMERICAN INSURANCE

21 COMPANY, is an Ohio Corporation, with its principal business offices in Cincinnati, Ohio and

22 licensed and authorized to engage in the business of insurance with California owned

23 businesses.

24   15. The true names, identities and capacities, whether individual, corporate,

25 associate, or otherwise of the Defendants named as DOES 1-100, Inclusive, herein, and each of

26 them, are unknown to the Plaintiffs who therefore sue said Defendants by such fictitious names.

27 Upon information and belief, each of said DOE Defendants is legally responsible in some

28 manner for the events and happenings referred to herein, and legally and proximately caused the

1   injuries and damages as alleged in this complaint. Upon further information and belief, DOES

2   1-100, inclusive, are residents of the State of California.

3         16.     Plaintiffs are informed and believe, and thereon allege that all Defendants,

4   including the fictitious Doe Defendants, were at all relevant times acting as actual agents,

5   conspirators, ostensible agents, partners and/or joint venturers and employees of all other

6   Defendants, and that all acts alleged herein occurred within the course and scope of said agency,

7   employment, partnership, and joint venture, conspiracy or enterprise, and with the express

8   and/or implied permission, knowledge, consent, authorization and ratification of their co-

9   defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so

10   would result in a contradiction with other allegations.

11                       **JURISDICTION AND VENUE**

12         17.     The complaint against Defendants arises from the breach of a property insurance

13   contract, entered into in Los Angeles County, California, and providing coverage for Plaintiffs'

14   commercial real property. Furthermore, the complaint against Defendants arises out of various

15   breaches of the Defendants' obligation of good faith and fair dealing that took place in Los

16   Angeles County California and/or involved an insurance claim pertaining to a property owned

17   by a California based business. Therefore, venue for all causes of action is proper in the

18   County of Los Angeles. The damages are in excess of $25,000.00 the jurisdictional minimum

19   for Superior Court, Unlimited Jurisdiction .

20         18.     This Court has jurisdiction over the entire action by virtue of the fact that this is

21   a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the

22   jurisdictional minimum of the Court.

23         19.     Venue is proper because the breach of contract of insurance herein alleged

24   pertains to a contract entered into in the County of Los Angeles of this state, within the venue

25   of this Court.

26   / / /

27   / / /

28   / / /

## FIRST CAUSE OF ACTION

### (Breach of Contract against All Defendants)

20.     Plaintiffs re-allege paragraphs one (1) through nineteen (19) as if fully set forth herein.

21.     This is an action for breach of contract arising out of a commercial insurance policy that was in full force and effect at the time that damages occurred to Plaintiffs' insured business.

22.     At all times relevant hereto, Plaintiffs were and are the owners and listed insureds of the commercial real property subject to the policy with Defendants.

23.     At all times relevant hereto, Plaintiffs' commercial real property was insured by a Commercial Insurance Policy entitled "Select Business Policy", Policy No. MAC 8182948, issued to Plaintiffs by Defendants.  The policy is an "All-Risks" insurance policy that provides coverage for all losses not specifically excluded.

24.     On or about May 15, 2010 and May 16, 2010, Plaintiffs' insured commercial property was severely damaged as a result of wind driven rain.  At that time, Plaintiffs' insurance policy was in full force and effect.

25.     Hail, water and storm damages are covered under the subject insurance policy as to business losses and other enumerated damages.

26.     Plaintiffs timely reported the loss to Defendants and filed a claim for indemnification pursuant to the terms and conditions of the insurance policy.  Defendants assigned the loss Claim/File No. 571-552592 and assigned an adjuster and representative to investigate and adjust Plaintiffs' claim.

27.     Defendants' representation that GREAT AMERICAN would provide expedient and proper mitigation in the event of a loss, along with fair payment of business income losses in a prompt and reasonable manner was breached and the proper mitigation of further damages was wrongfully withheld and or denied.  To date, Defendants refused to pay the reasonable amount of covered damages under the policy.

///

1      28.    In low-balling and delaying coverage payout for the loss, Defendants willfully
2  and wrongfully ignored complying with its contractual obligation to indemnify Plaintiffs for a
3  covered loss.

4      29.    Plaintiffs have performed all things legally required of them, or in the
5  alternative, have been excused by the actions, statements, or representations of Defendants.
6  Nevertheless, Defendants unreasonably low-balled and delayed coverage and fraudulently
7  represented that mitigation to Plaintiffs' damages and loss would occur.  Defendants refused to
8  tender Plaintiffs all monies due and owing under the insurance policy.

9      30.    Defendants' refusal to provide reasonable and represented coverage for the loss
10  and refusal to tender all monies due and owing under the policy is a breach of the insurance
11  contract.

12      31.    As a result of Defendants' breach of its insurance contract, Plaintiffs have lost
13  the benefits of their insured property and suffered additional business interruption.

14      32.    As a direct result of Defendants' breach of the insurance contract, Plaintiffs
15  have suffered financial damages in an amount to be determined at trial and continue to suffer
16  the loss.

17      33.    As a direct result of Defendants' breach of the insurance contract, Plaintiffs
18  have suffered consequential damages in an amount to be determined at trial and continue to
19  suffer the loss.

20      34.    As a direct result of Defendants' breach of the insurance contract, Plaintiffs
21  were forced to retain counsel and bring this action to obtain the amounts due and owing under
22  the policy.  Plaintiffs have also sustained other economic losses as a direct, proximate and legal
23  result of Defendants' conduct, in an amount to be proven at trial.

24

25                    **SECOND CAUSE OF ACTION**

26      **(Breach of Duty of Good Faith and Fair Dealing against all Defendants)**

27      35.    Plaintiffs re-allege and incorporates by reference the allegations contained in the
28  preceding  paragraphs (1) through thirty-four (34) as if fully set forth herein.

COMPLAINT

36. Every insurance contract entered into in California contains an inherent obligation of good faith and fair dealing that requires every insurer and its agents and/or representatives to treat its policyholders in the utmost fairness and with due regard for his or her interests.

37. Defendants assumed these obligations by their issuance of the insurance policy to Plaintiffs.

38. Defendant Does assumed these obligations by their participation in the investigation and adjustment of Plaintiffs' claim at the direction of GREAT AMERICAN .

39. Defendants have breached their duties of good faith and fair dealing owed to Plaintiffs. These breaches include, but are not limited to, the following unreasonable actions:

    a. Misrepresenting pertinent information or policy provisions relating to coverage at issue.

    b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the policy;

    c. Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the policy;

    d. Delaying the claim by failing to affirm or deny coverage within a reasonable time after proof of loss requirements under the policy have been completed and submitted;

    e. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim,

    f. Failing to promptly provide a reasonable explanation of the basis for denial relied upon in relation to the applicable policy language;

    g. Failing to interpret the policy in accordance with California law and in accordance with Plaintiffs' reasonable expectations;

    h. Failing to promptly and fairly investigate, process, and determine coverage based on the applicable policy language;

i.  Unreasonably and in bad faith withholding benefits due under the policy without proper cause;

j.  Unreasonably and in bad faith failing to diligently search for reasons to support Plaintiffs' claim, and instead proactively searching for ways to oppose the claim and deny coverage;

k.  Wrongfully denying coverage for Plaintiffs' valid claim;

l.  Wrongfully forcing Plaintiffs to file suit to recover all amounts due and owing under the policy; and

m.  Incentivizing employees, adjusters, and representatives, financially or otherwise to low-ball and/or deny valid claims to improve corporate profits and loss ratios.

40.  Upon information and belief, Defendants have breached their obligations of good faith and fair dealing to Plaintiffs by other acts and omissions of which Plaintiffs are currently unaware and which will be revealed during the discover process and shown according to proof at trial.

41.  The aforementioned wrongful conduct was committed and/or ratified by Defendants and was done intentionally, willfully, wantonly, maliciously, and/or with reckless disregard for the rights of Plaintiffs.  Furthermore, Plaintiffs contend that this conduct occurs with such frequency to constitute the general business practices of Defendants and is part of a repeated pattern of unfair practices.

42.  As a direct result of Defendants' aforementioned unreasonable conduct, Plaintiffs have lost the benefits of its insured commercial property and has been forced to financial hardship in building and business repairs, as well as business interruption.

43.  As a direct result of Defendants' aforementioned unreasonable conduct, Plaintiffs have suffered financial damages in an amount to be determined at trial and continue to suffer the loss.

///

///

1    44.    As a direct result of Defendants' aforementioned unreasonable conduct,

2    Plaintiffs have suffered consequential damages in an amount to be determined at trial and

3    continue to suffer such losses.

4    45.    Defendants intended their conduct to cause injury to Plaintiffs.  Alternatively,

5    Defendants engaged in despicable conduct carried out with a willful and conscious disregard of

6    the rights of Plaintiffs and/or subjected Plaintiffs to cruel and unjust hardship in conscious

7    disregard of Plaintiffs' rights.  Alternatively, Defendants' conduct constituted an intentional

8    misrepresentation, deceit, or concealment of a material fact known to Defendants with the

9    intention of depriving Plaintiffs of their property and/or legal rights, or causing other injury.

10    46.    Therefore, Defendants' conduct constitutes malice, oppression, or fraud under

11    California *Civil Code* §3294, entitling Plaintiffs to punitive damages in an amount appropriate

12    to punish Defendants and deter similar conduct in the future.

13

14    **THIRD  CAUSE OF ACTION**

15    **(Unfair Business Practices Pursuant to Bus. & Prof. Code §§ 17200, *et seq.***

16    **by all Plaintiffs against all Defendants)**

17    47.    Plaintiffs re-allege and incorporates by reference the allegations contained in the

18    preceding  paragraphs  (1) through forty-six (46) as if fully set forth herein.

19    48.    Business and  Professions Code §§ 17200, *et seq.* prohibits any unfair

20    competition, including any unlawful, unfair or fraudulent business act or practice.  Plaintiffs

21    allege that Defendants conduct was unfair, unlawful and/or fraudulent.

22    49.    The conduct of Defendants as alleged in this Complaint constitutes unfair

23    competition as defined by Business and Professions Code §§ 17200, *et seq.* the conduct includes

24    but is not limited to the allegations in this Complaint and acts and practices:

25    a.    Devising and implementing a scheme to deny and/or underpay claims in

26    order to further its own economic interests to the detriment of insured;

27    b.    Intentionally failing to pay all costs associated with repair where those

28    costs were appropriate;

c.    Misleading policyholders that losses would be fairly and promptly paid;

d.    Failure to inform Plaintiffs of the full extent of their coverages.

50.    Plaintiffs prosecute this action on their own behalf and on the behalf of the public in the State of California.  Plaintiffs are entitled to restitution and disgorgement of any amounts Defendants have received or withheld as a result of its deceptive and misleading business practices set forth above.

51.    Plaintiffs are also entitled to an injunction preventing Defendants from engaging in the widespread conduct alleged herein.

**WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:**

1.    For general, special and consequential damages according to proof;

2.    For punitive and exemplary damages;

3.    For attorney's fees and costs pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813;

4.    For restitution and disgorgement;

5.    For Attorney's fees and costs incurred, as allowed by law;

6.    For costs of suits herein;

7.    For pre-judgment and post judgment interest according to proof;

8.    For injunctive relief;

9.    For such other and further relief as the Court deems just and proper.

DATED: March 22, 2012

MERLIN LAW GROUP, P.A.

By: _____
WILLIAM F. MERLIN
DENISE H. SZE
*Attorneys for Plaintiffs,*
C.R. OPERATING COMPANY, INC. and
LINCOLN PLAZA OFFICE BUILDING, LLC

1

### DEMAND FOR JURY TRIAL

2    PLAINTIFFS herein demand trial by jury of all claims and causes of action in this lawsuit.

3

4

5    DATED: March 22, 2012               MERLIN LAW GROUP, P.A.

6

                               By:

7                                WILLIAM F. MERLIN

8                                DENISE H. SZE
                                *Attorneys for Plaintiffs,*
                  C.R. OPERATING COMPANY, INC. and

9            LINCOLN PLAZA OFFICE BUILDING, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- EXHIBIT 1 -

C *11*02/08/10*MA©B182948-03                          ORIGINAL COPY
                         0104205    GREAT AMERICAN INS CO OF NY

GREATAMERICAN.    Administrative Offices                    SB 88 02
INSURANCE GROUP   580 Walnut Street                        (Ed. 01 88)
                  Cincinnati, Ohio 45202
                  Tel: 1-513-369-5000


### SELECT BUSINESS POLICY GENERAL ENDORSEMENT


FORM SB8605 IS AMENDED AS FOLLOWS:

SECTION 2. EXTENDED BUSINESS INCOME
    A. BUSINESS INCOME OTHER THAN "RENTAL VALUE"
        (2) ENDS ON THE EARLIER OF:
            (B) 180 CONSECUTIVE DAYS AFTER
            THE DATE DETERMINED IN (1) ABOVE

C •11•02/08/10•MAC8182948-03                    ORIGINAL COPY
                    0104205    GREAT AMERICAN INS CO OF NY



GREAT AMERICAN.        Administrative Offices
INSURANCE GROUP        580 Walnut Street                    SB 87 12
                       Cincinnati, Ohio 45202               (Ed. 07 02)
                       Tel: 1-513-369-5000

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SELECT BUSINESS POLICY**
**ACCOUNTS RECEIVABLE EXTENSION**

This endorsement modifies insurance provided under the following:

ACCOUNTS RECEIVABLE COVERAGE FORM

The **Accounts Receivable Coverage Form** is amended as follows:

1. Accounts receivables includes Credit and Charge Card slips.

2. **Additional Conditions D.3.b., Coinsurance,** is deleted in its entirety.

SB 87 12 (Ed. 07/02) XS

C ⋅11⋅02/08/10⋅MAC8182948-03              ORIGINAL COPY
         0104205   GREAT AMERICAN INS CO OF NY



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

SB 87 96
(Ed. 10 04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SELECT BUSINESS POLICY**

**WINDSTORM OR HAIL EXCLUSION – DIRECT DAMAGE**

This endorsement modifies insurance provided under the following:

SELECT BUSINESS POLICY BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**A.** The following is added to the Exclusions Section and is therefore **not a Covered Cause of Loss:**

**Windstorm or Hail**

We will not pay for loss or damage:

1. caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or

2. caused by rain, snow, sand or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Windstorm or Hail.

But if Windstorm or Hail results in fire or explosion, we will pay for the loss or damage caused by such fire or explosion.

For example, if the Windstorm or Hail damages a heating system and fire results, the loss or damage attributable to the fire is covered subject to any other applicable policy provisions.

**B.** Under **Definitions** – Windstorm or Hail is deleted from the "specified causes of loss."

**C.** This endorsement does not apply to coverage provided under the following:

1. **Select Business Policy Business Income (and Extra Expense) Coverage Form;**

2. **Select Business Policy Business Income (without Extra Expense) Coverage Form;** and

3. **Select Business Policy Extra Expense Coverage Form.**

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.

SB 87 96 (Ed. 10/04) XS

C •11•02/08/10•MAC8182948•03
0104205   GREAT AMERICAN INS CO OF NY

ORIGINAL COPY



Administrative Offices
580 Walnut Street
Cincinnati, Ohio, 45202
Tel. 1-513-369-5000

SB 87 83
(Ed. 07 02)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## OKLAHOMA CHANGES - APPRAISAL

This endorsement modifies insurance provided under the following:

SELECT BUSINESS POLICY CONDITIONS

**A.** The Appraisal Condition is replaced by the following:

**Appraisal**

If we and you disagree on the value of the property, the amount of Net Income and operating expense or the amount of loss ("loss"), either party may make written demand for an appraisal of the loss. In this event, only the party which demanded the appraisal will be bound by the results of that appraisal.

Each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days after the written demand for an appraisal has been made. The two appraisers will select an umpire. If they cannot agree upon an umpire within 15 days, then, at the request of either you or us, and after notice of hearing to the nonrequesting party by certified mail, selection of the umpire will be made by a judge of

a district court in the county where the loss ("loss") occurred. The appraisers will state separately the value of the property, the amount of Net Income and operating expense or amount of loss ("loss"). If the appraisers submit a written report of agreement to us, the amounts agreed upon will be the value of the property and the amount of loss ("loss") and will be binding on the party which demanded the appraisal. If the appraisers fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding on the party which demanded the appraisal. Each party will:

**a.** pay its chosen appraiser; and

**b.** bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

SB 87 83 (Ed. 07/02) XS

C *11*02/08/10*MAC8182948-03            ORIGINAL COPY
            0104205    GREAT AMERICAN INS CO OF NY

CP 01 40
(Ed. 07 06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

     COMMERCIAL PROPERTY COVERAGE PART
     SELECT BUSINESS COVERAGE PART
     STANDARD PROPERTY POLICY

**A.** The exclusion set forth in paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus," wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in paragraph B., such exclusion supersedes any exclusion relating to "pollutants."

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

    1. Exclusion of "Fungus," Wet Rot, Dry Rot and Bacteria; and

    2. Additional Coverage — Limited Coverage for "Fungus," Wet Rot, Dry Rot and Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in paragraph B., or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

Copyright, ISO Properties, Inc., 2006

CP 01 40 (Ed. 07/06) XS

C *11*02/08/10*MAC8182948-03                     ORIGINAL COPY
                0104205     GREAT AMERICAN INS CO OF NY

CM 00 66
(Ed. 03 10)

## ACCOUNTS RECEIVABLE COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to section E - **Definitions.**

### A. Coverage

1. We will pay:

   a. all amounts due from your customers that you are unable to collect;

   b. interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

   c. collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

   d. other reasonable expenses that you incur to reestablish your records of accounts receivable;

   that result from Covered Causes of Loss to your records of accounts receivable.

2. **Property Not Covered**

   Coverage does not apply to:

   a. records of accounts receivable in storage away from the "premises" shown in the Declarations; or

   b. contraband, or property in the course of illegal transportation or trade.

3. **Covered Causes of Loss**

   Covered Causes of Loss means Direct Physical Loss or Damage to your records of accounts receivable except those causes of loss listed in the exclusions.

4. **Additional Coverage - Collapse**

   The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in paragraphs a. through c.

   a. For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

   b. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

      (1) building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

      (2) insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

      (3) use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

      (4) use of defective material or methods in construction, remodeling or renovation if the abrupt

Copyright, ISO Properties, Inc., 2009

C  *11*02/08/10*MAC8182948-03                          ORIGINAL COPY
                    0104205    GREAT AMERICAN INS CO OF NY

collapse occurs after the con-
struction, remodeling or renova-
tion is complete, but only if the
collapse is caused in part by:

    (a) a cause of loss listed in
    paragraph (1) or (2);

    (b) one or more of the follow-
    ing causes of loss: fire;
    lightning; windstorm; hail;
    explosion; smoke; aircraft;
    vehicles; riot; civil commo-
    tion; vandalism; leakage from
    fire extinguishing equipment;
    sinkhole collapse; volcanic
    action; breakage of building
    glass; falling objects; weight
    of snow, ice or sleet; water
    damage; earthquake; all only
    as insured against in this
    Coverage Form;

    (c) weight of people or person-
    al property; or

    (d) weight of rain that collects
    on a roof.

**c.** This Additional Coverage – Collapse
will not increase the Limits of Insur-
ance provided in this Coverage Form.

**5. Coverage Extension**

**Removal**

If you give us written notice within 10
days of removal of your records of ac-
counts receivable because of imminent
danger of loss or damage, we will pay for
loss or damage while they are:

**a.** at a safe place away from your
"premises"; or

**b.** being taken to and returned from that
place.

This Coverage Extension is included within
the Limit of Insurance applicable to the
"premises" from which the records of ac-
counts receivable are removed.

**B. Exclusions**

1. We will not pay for loss or damage caus-
ed directly or indirectly by any of the fol-
lowing. Such loss or damage is excluded
regardless of any other cause or event
that contributes concurrently or in any se-
quence to the loss.

   **a. Governmental Action**

   Seizure or destruction of property by
   order of governmental authority.

   But we will pay for loss or damage
   caused by or resulting from acts of
   destruction ordered by governmental
   authority and taken at the time of a
   fire to prevent its spread if the fire
   would be covered under this Coverage
   Form.

   **b. Nuclear Hazard**

   Nuclear reaction or radiation, or radio-
   active contamination, however caused.

   But if nuclear reaction or radiation, or
   radioactive contamination results in
   fire, we will pay for the direct loss or
   damage caused by that fire if the fire
   would be covered under this Coverage
   Form.

   **c. War and Military Action**

     (1) war, including undeclared or civil
     war;

     (2) warlike action by a military force,
     including action in hindering or
     defending against an actual or ex-
     pected attack, by any govern-
     ment, sovereign or other author-
     ity using military personnel or
     other agents; or

     (3) insurrection, rebellion, revolution,
     usurped power, or action taken
     by governmental authority in hin-
     dering or defending against any
     of these.

Exclusions **B.1.a.** through **B.1.c.** apply
whether or not the loss event results in
widespread damage or affects a substan-
tial area.

Copyright, ISO Properties, Inc., 2009
(Page 2 of 5)

C  *11*02/08/10*MAC8182948-03                               ORIGINAL COPY
                    0104205    GREAT AMERICAN INS CO OF NY

2. We will not pay for loss or damage caus-
   ed by or resulting from any of the fol-
   lowing:

   a. Delay, loss of use, loss of market or
      any other consequential loss.

   b. Dishonest or criminal act committed
      by:

      (1) you, any of your partners, em-
          ployees, directors, trustees, or
          authorized representatives;

      (2) a manager or a member if you are
          a limited liability company;

      (3) anyone else with an interest in the
          property, or their employees or
          authorized representatives; or

      (4) anyone else to whom the prop-
          erty is entrusted for any purpose.

      This exclusion applies whether or not
      such persons are acting alone or in
      collusion with other persons or such
      acts occur during the hours of em-
      ployment.

      This exclusion does not apply to Cov-
      ered Property that is entrusted to oth-
      ers who are carriers for hire or to
      acts of destruction by your employ-
      ees. But theft by employees is not
      covered.

   c. Alteration, falsification, concealment or
      destruction of records of accounts
      receivable done to conceal the
      wrongful giving, taking or withholding
      of money, securities or other prop-
      erty.

      This exclusion applies only to the ex-
      tent of the wrongful giving, taking or
      withholding.

   d. Bookkeeping, accounting or billing er-
      rors or omissions.

   e. Electrical or magnetic injury, distur-
      bance or erasure of electronic re-
      cordings that is caused by or results
      from:

      (1) programming errors or faulty
          machine instructions;

      (2) faulty installation or maintenance
          of data processing equipment or
          component parts;

      (3) an occurrence that took place
          more than 100 feet from your
          "premises"; or

      (4) interruption of electrical power
          supply, power surge, blackout or
          brownout if the cause of such
          occurrence took place more than
          100 feet from your "premises."

      But we will pay for direct loss or
      damage caused by lightning.

   f. Voluntary parting with any property by
      you or anyone entrusted with the
      property if induced to do so by any
      fraudulent scheme, trick, device or
      false pretense.

   g. Unauthorized instructions to transfer
      property to any person or to any
      place.

   h. Neglect of an insured to use all rea-
      sonable means to save and preserve
      property from further damage at and
      after the time of loss.

3. We will not pay for loss or damage that
   requires any audit of records or any in-
   ventory computation to prove its factual
   existence.

4. We will not pay for loss or damage caus-
   ed by or resulting from any of the fol-
   lowing. But if loss or damage by a Cov-
   ered Cause of Loss results, we will pay
   for the loss or damage caused by that
   Covered Cause of Loss.

   a. Weather conditions. But this exclusion
      only applies if weather conditions
      contribute in any way with a cause or
      event excluded in paragraph 1. above
      to produce the loss or damage.

   b. Acts or decisions, including the failure
      to act or decide, of any person, group,
      organization or governmental body.

Copyright, ISO Properties, Inc., 2009
CM 00 66 (Ed. 03/10) XS                      (Page 3 of 5)

C  *11*02/08/10*MACB182948-03                                    ORIGINAL COPY
                        0104205    GREAT AMERICAN INS CO OF NY

c. Faulty, inadequate or defective:

    (1) planning, zoning, development, surveying, siting;

    (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    (3) materials used in repair, construction, renovation or remodeling; or

    (4) maintenance;

of part or all of any property wherever located.

d. Collapse, including any of the following conditions of property or any part of the property:

    (1) an abrupt falling down or caving in;

    (2) loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

    (3) any cracking, bulging, sagging, bending, leaning, settling, shrinking or expansion as such condition relates to paragraph (1) or (2).

This Exclusion, d., does not apply to the extent that coverage is provided under the Additional Coverage – Collapse or to collapse caused by one or more of the following: fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; earthquake; weight of people or personal property; weight of rain that collects on a roof.

**C. Limits of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**D. Additional Conditions**

  **1. Determination of Receivables**

    General Condition F. Valuation in the Commercial Inland Marine Conditions is replaced by the following:

    a. If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage, the following method will be used:

      (1) determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

      (2) adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

    b. The following will be deducted from the total amount of accounts receivable, however that amount is established:

      (1) the amount of the accounts for which there is no loss or damage;

      (2) the amount of the accounts that you are able to reestablish or collect;

      (3) an amount to allow for probable bad debts that you are normally unable to collect; and

      (4) all unearned interest and service charges.

Copyright, ISO Properties, Inc., 2009

C *11*02/08/10*MAC8182948-03
0104205   GREAT AMERICAN INS CO OF NY

ORIGINAL COPY

## 2. Recoveries

The following is added to Loss Condition H. Recovered Property in the Commercial Inland Marine Conditions:

You will pay us the amount of all recoveries you receive for loss or damage paid by us. But any recoveries in excess of the amount we have paid belong to you.

## 3. The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

### a. Coverage Territory

We cover records of accounts receivable:

(1) within your "premises"; and

(2) away from your "premises" while in transit or within premises of others if those premises are located or the transit is within:

  (a) the United States of America (including its territories and possessions);

  (b) Puerto Rico; and

  (c) Canada.

### b. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

We will not pay the full amount of any loss if the value of all accounts receivable, except those in transit, at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for Coverage Applicable At All Locations.

Instead, we will determine the most we will pay using the following steps:

(1) multiply the value of all accounts receivable, except those in transit, at the time of loss by the Coinsurance percentage;

(2) divide the Limit of Insurance for Coverage Applicable At All Locations by the figure determined in Step (1); and

(3) multiply the total amount of loss by the figure determined in Step (2).

We will pay the amount determined in Step (3) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

This condition will not apply to records of accounts receivable in transit, interest charges, excess collection expenses or expenses to reestablish your records of accounts receivable.

### c. Protection of Records

Whenever you are not open for business, and except while you are actually using the records, you must keep all records of accounts receivable in receptacles that are described in the Declarations.

## E. Definitions

"Premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

Copyright, ISO Properties, Inc., 2009
(Page 5 of 5)

CM 00 66 (Ed. 03/10) XS

C *11*02/08/10*MAC8182948-03                ORIGINAL COPY
          0104205   GREAT AMERICAN INS CO OF NY

**GREATAMERICAN.** INSURANCE GROUP
Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1 513-369-5000

CM 78 22
(Ed. 04 91)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MORTGAGE HOLDERS

### SCHEDULE

| Description of Property | Mortgage Holder (Name and Address) |
|---|---|
| 4545 N. LINCOLN BLVD,<br>OKLAHOMA CITY, OK 73105 | KEYCORP REAL ESTATE CAPITAL<br>MA BANK, NA AS TTEE<br>911 MAIN ST., SUITE 1500<br>KANSAS CITY, MO 64105 |

The term "mortgage holder" includes trustee.

1. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown above in their order of precedence, as interest may appear.

2. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

3. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

    a. pays any premium due under this Coverage Part at our request if you have failed to do so;

    b. submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    c. has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

    All of the terms of this Coverage Part will then apply directly to the mortgage holder.

4. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

    a. the mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

CM 78 22 (Ed. 04/91) PRO        (Page 1 of 2)        TLB 020810

C  *11*02/08/10*MAC8182948-03                          ORIGINAL COPY
                    0104205    GREAT AMERICAN INS CO. OF NY

    b.   the mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

        At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

5.  If we cancel this policy, we will give written notice to the mortgage holder at least:

    a.   10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    b.   30 days before the effective date of cancellation if we cancel for any other reason.

6.  If we elect not renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

**Other Terms Remain The Same**

CM 78 22 (Ed. 04/91) PRO              (Page 2 of 2

C *11*02/08/10*MAC8182948-03            ORIGINAL COPY
         0104205    GREAT AMERICAN INS CO OF NY

**GREAT AMERICAN.** Administrative Offices
INSURANCE GROUP   580 Walnut Street
        Cincinnati, Ohio 45202
        Tel: 1-513-369-5000

                                 CM 78 22
                                 (Ed. 04 91)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### MORTGAGE HOLDERS

#### SCHEDULE

| Description of Property | Mortgage Holder (Name and Address) |
|---|---|
| 3535 NW 58TH, OKC, OK | STILLWATER NATIONAL BANK & TRUST, ISAOA |
| 3545 NW 58TH, OKC, OK | P.O. BOX 521500 |
| 3535 NW 58TH, OKC, OK | TULSA, OK  74152 |

The term "mortgage holder" includes trustee.

1. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown above in their order of precedence, as interest may appear.

2. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

3. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

     a. pays any premium due under this Coverage Part at our request if you have failed to do so;

     b. submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

     c. has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

     All of the terms of this Coverage Part will then apply directly to the mortgage holder.

4. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

     a. the mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

CM 78 22 (Ed. 04/91) PRO          (Page 1 of 2)          TLB 020810

C *11*02/08/10*MAC8182948-03                                    ORIGINAL COPY
                        0104205     GREAT AMERICAN INS CO OF NY

    b.   the mortgage holder's right to recover the full amount of the
        mortgage holder's claim will not be impaired.

        At our option, we may pay to the mortgage holder the whole
        principal on the mortgage plus any accrued interest. In this
        event, your mortgage and note will be transferred to us and you
        will pay your remaining mortgage debt to us.

5.   If we cancel this policy, we will give written notice to the mortgage
    holder at least:

    a.   10 days before the effective date of cancellation if we cancel for
        your nonpayment of premium; or

    b.   30 days before the effective date of cancellation if we cancel for
        any other reason.

6.   If we elect not renew this policy, we will give written notice to the
    mortgage holder at least 10 days before the expiration date of this
    policy.

**Other Terms Remain The Same**

C •11•02/08/10•MAC8182948-03

0104205   GREAT AMERICAN INS CO OF NY

ORIGINAL COPY

GREATAMERICAN,
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CM 76 58
(Ed. 12 98)

# BUSINESS ELECTRONIC SYSTEMS
# AND TELECOMMUNICATIONS FORMS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION F DEFINITIONS.

## A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. **Covered Property,** as used in this Coverage Form, means:

   a. **Electronic Equipment** – meaning your Electronic Data Processing, Information Technology Hardware, and Telecommunications Equipment, including their component parts;

   b. **Data, Programs and Media**

      (1) Data is information which has been converted to a form usable in Data Processing Equipment. Data includes Computer Programs and Instructions;

      (2) Media is the material on which Data is recorded; for example, magnetic disks and tapes.

   c. **Property of Others** – similar property of others in your care, custody or control, and for which you are legally responsible.

2. **Property Not Covered**

   · Covered Property does not include:

   a. Property you loan, rent or lease to others while it is away from your premises;

   b. Data or Media which cannot be replaced with other of the same kind or quality, unless it is specifically described and scheduled with a separate Limit of Insurance in the Declarations.

   c. Satellites, microwave towers and dishes, earth stations, telephone switching stations or similar property.

   d. Accounts, bills, currency, securities, evidence of debt, valuable papers, abstracts, records, deeds, manuscripts or other documents, unless converted to Data, and then only in that form.

   e. Your stock in trade.

   f. Contraband, or property in the course of illegal transportation or trade.

3. **Covered Causes of Loss**

   Covered Causes of Loss means Risks Of Direct Physical "Loss" to Covered Property except those causes of "loss" listed in the Exclusions.

CM 76 58 (Ed. 12/98) XS                    (Page 1 of 7)

C *11*02/08/10*MAC8182948-03                                    ORIGINAL COPY
                        0104205   GREAT AMERICAN INS CO OF NY

4. Additional Coverages

a. Extra Expense

(1) We will pay the actual and neces-
sary Extra Expense you sustain
from a Covered Cause of Loss,
due to direct physical loss of or
damage to: .

(a) Covered Property at your
premises or in transit, within
the Coverage Territory;

(b) the building in which the
Covered Property is located,
provided the building is
damaged to an extent which
prevents access to the Cov-
ered Property;

(c) the air conditioning, voltage
regulator, line conditioner or
uninterruptable power supply
systems that specifically
service your data processing
operation;

(d) the electrical or telecom-
munication system that spe-
cifically services your data
processing operation, pro-
vided the damage to the
system occurs inside, or
within 100 feet of, the
building housing your data
processing operation.

(e) a building adjacent to a
scheduled location, when
access to the scheduled lo-
cation is prohibited by civil
authority. Coverage is limited
to no more than two (2)
weeks.

(2) Extra Expense means necessary
expenses you incur during the
"period of restoration" that you
would not have incurred if there
had been no direct physical loss
or damage to property:

(a) To avoid or minimize the
suspension of business and
to continue "operations":

(i) at the described prem- ·
ises; or

(ii) at replacement prem-
ises or at temporary
locations, including:

Relocation ex-
penses; and

Costs to equip and
operate the re-
placement or tem-
porary locations.

(b) To minimize the suspension
of business if you cannot
continue "operations"; or

(c) (i) to repair or replace any
property; or

(ii) to research, replace or
restore the lost infor-
mation on damaged
valuable papers and
records;

but only to the extent it
reduces the amount of
loss that otherwise
would have been pay-
able under this Addi-
tional Coverage.

(3) The most we will pay for "loss" in
any one occurrence under this
Additional Coverage is the appli-
cable Extra Expense Limit of In-
surance shown in the Declara-
tions.

(b) Newly Acquired Electronic Equip-
ment

We will pay for "loss" to Newly Ac-
quired Electronic Equipment at each
location scheduled in the Declarations,
provided the value of the equipment is
reported to us within 60 days from
the time you acquired it. If it is not
reported within that time, or if the
policy period ends within that time,
coverage will cease. We will compute
the additional premium due from the
date you acquire the equipment.

CM 76 58 (Ed. 12/98) XS                    (Page 2 of 7)

C *11*02/08/10*MAC8182948-03
0104205

ORIGINAL COPY
GREAT AMERICAN INS CO OF NY

The most we will pay for "loss" in any one occurrence under this Additional Coverage is 25% of the highest Limit of Insurance for any location shown in the Declarations, for coverage A.1.a. Electronic Equipment, up to a maximum of $250,000.

c. **Newly Acquired Locations**

We will pay for "loss" to Covered Property at any new location which you acquire, provided the new location is reported to us within 60 days from the time you acquired it. If it is not reported within that time, or if the policy period ends within that time, coverage will cease. We will compute any change in your premium from the date you occupy the new location.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is the In Transit/Any Other Location Limit shown in the Declarations.

d. **Temporary Locations**

We will pay for "loss" to Covered Property while at temporary locations but only for the first 60 days that the property is located there, and not beyond the end of the policy period.

The most we will pay in any one occurrence under this Additional Coverage is the In Transit/Any Other Location Limit shown in the Declarations.

e. **Debris Removal**

We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss.

The most we will pay for "loss" at each location under this Additional Coverage is 25% of the sum of the applicable location limits for Electronic Equipment and Data, Programs, Media Coverages up to a maximum of $100,000.

This Additional Coverage doesn't apply to the cost to:

(1) extract "pollutants" from land or water; or

(2) remove, restore or replace polluted land or water.

f. **Pollutant Clean Up and Removal**

We will pay your necessary expense to extract "pollutants" from land or water at the premises described in the Declarations, if the release, discharge or dispersal of the "pollutants" results from a Covered Cause of Loss to Covered Property that occurs during the policy period. Your expenses will be paid only if they are reported to us within 180 days of the earlier of:

(1) the date of the direct physical loss or damage; or

(2) the end of the policy period.

The most we will pay for each location under this Additional Coverage is 10% of the sum of the applicable location limits for Electronic Equipment and Data, Programs, Media Coverages, up to a maximum of $10,000, for the sum of all such expenses for each separate 12 month policy period.

No deductible applies to this Additional Coverage.

g. **Cost of Preparing a Statement of Loss**

We will pay the cost of preparing a statement of loss or any other exhibits required in connection with any claim under this Coverage Form.

The most we will pay for the cost of preparing a statement of loss or other exhibits under this Additional Coverage is $1,000.

This Additional Coverage does not include public adjuster's fees.

CM 76 58 (Ed. 12/98) XS                    (Page 3 of 7)

C •11•02/08/10•MAC8182948-03                                        ORIGINAL COPY
                    0104205     GREAT AMERICAN INS CO OF NY

**h. Duplicate Data**

We will pay for your "loss" of duplicate data stored at locations not scheduled on the Declarations. The most we will pay for "loss" under this Additional Coverage in any one occurrence is 25% of the highest Data, Programs, Media location limit up to a maximum of $100,000.

**i. Protective Equipment**

We will pay your necessary expenses to:

(1) Repair or replace (in excess of any amount covered by other insurance);

(2) Recharge:

Your fire protection equipment that is used exclusively to protect the Covered Property.

We will pay if the damage or discharge is the result of a response to a fire, a false alarm, or another Covered Cause of Loss. But, we won't pay for discharge which occurs during installation, repair or recharge. Nor will we pay for gradual leakage from the system.

The most we will pay under this Additional Coverage in any one occurrence is $25,000.

These Additional Coverages have separate Limits of Insurance.

**B. EXCLUSIONS**

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   **a. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

   **b. Nuclear Hazard**

   (1) Any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

   **c. War and Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

   **d. Earth Movement**

   (1) Any earth movement such as earthquake, landslide, or earth sinking, rising or shifting. But if loss or damage by fire, theft, or explosion results, we will pay for that resulting "loss."

   (2) Volcanic eruption, explosion or effusion. But if "loss" by fire or volcanic action results, we will pay for that resulting "loss."

CM 76 58 (Ed. 12/98) XS                          (Page 4 of 7)

C •11•02/08/10•MAC8182948-03
0104205    GREAT AMERICAN INS CO OF NY                ORIGINAL COPY

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

    (a) airborne volcanic blast or airborne shock waves;

    (b) ash, dust or particulate matter; or

    (c) lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical "loss" to the described property.

  **e. Water**

    (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

    (2) Mudslide or mudflow;

    (3) Water that backs up from a sewer or drain; or

    (4) Water under the ground surface pressing on, or flowing or seeping through:

      (a) foundations, walls, floors or paved surfaces;

      (b) basements, whether paved or not; or

      (c) doors, windows or other openings.

But if "loss" by fire, explosion, theft or sprinkler leakage results, we will pay for that resulting "loss."

2. We will not pay for a "loss" caused by or resulting from any of the following:

  **a.** Dishonest acts by you, your partners, officers or trustees, or your or their agents, or others to whom Covered Property is entrusted;

    This exclusion will not apply to acts of destruction by an employee of yours; nor will it apply to bailees for hire (for example, truckers or warehousemen). But we will not pay for theft by your employees.

  **b.** Delay, loss of market or loss of income;

  **c.** The enforcement of any law which regulates the construction, repair or demolition of buildings or other structures;

  **d.** Any change in, or interruption of:

    (1) power supply; or

    (2) telecommunications service

    if the change originates more than 100 feet away from the premises containing the Covered Property (equipment). But, if a loss or damage by fire, explosion or theft results, we will pay for that resulting "loss."

  **e.** Programming errors or incorrect machine instructions. This does not include loss or damage by computer virus or other malicious software.

In addition to the above, we will not pay for any Extra Expense you incur due to:

  **f.** Interference by strikers or other persons with repairs to damaged property, or with resumption of normal business "operations";

  **g.** Mechanical or machinery breakdown of any property not named in the Extra Expense Additional Coverage;

C *11*02/08/10*MAC8182948-03

ORIGINAL COPY

0104205

GREAT AMERICAN INS CO OF NY

h. The suspension, lapse or cancellation of any lease, license or contract beyond the "period of restoration";

i. Any other consequential "loss."

3. We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the "loss."

b. Faulty, inadequate or defective workmanship, repair, material used in repair, upgrading or remodeling of Covered Property.

c. Wear and tear, gradual deterioration or obsolescence.

## C. LIMITS OF INSURANCE

Except for the Additional Coverages b,e,f,g,h and i, the most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations. The Limits of Insurance for Additional Coverages b,e,f,g,h and i, are stated in those Additional Coverages.

## D. DEDUCTIBLE

We will pay only the amount of the adjusted "loss" in excess of the applicable Deductible shown in the Declarations, up to the applicable Limit of Insurance.

1. The **Breakdown** Deductible applies to losses resulting from:

a. Mechanical breakdown, (for example, head crash) of the Covered Property;

b. Short circuit, blow-out or other electric or magnetic disturbance, other than lightning, within electrical equipment, apparatus or devices;

c. Any repairing, servicing or processing operation;

d. Damage to Data or Media when Electronic Equipment breaks down or malfunctions while Data or Media is being run through the system.

2. The All Other "Loss" Deductible applies to all other losses under this Coverage Form.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

1. **Coverage Territory**

We cover Covered Property in transit to, or from, and at:

a. Locations shown in the Declarations;

b. Newly acquired locations and temporary locations as provided in the Additional Coverages for Newly Acquired Locations and Temporary Locations;

all while in:

c. The United States of America;

d. Canada;

but we do not cover property in transit by watercraft to or from Alaska or Hawaii.

2. **Valuation**

The Valuation General Condition is replaced by the following:

a. **Electronic Equipment**

We will adjust a "loss" to Electronic Equipment on the basis of "replacement cost." The most we will pay is the lesser of:

(1) the amount necessary to repair the equipment; or

(2) the amount necessary to replace the equipment with:

CM 76 58 (Ed. 12/98) XS

(Page 6 of 7)

C *11*02/08/10*MAC8182948-03
0104205

(a) equipment of the same kind and quality; or

(b) if Equipment cannot be replaced by Equipment of the same kind and quality, new Equipment capable of performing the same functions.

(3) The applicable Limit of Insurance.

**b. Data**

Data (including Programs) will be valued at the actual cost of replacing the Data. If it is not replaced or reproduced, we will pay the cost of the blank Media.

**c. Media**

The value of the Media will be the cost to replace the Media with material of the same kind or quality.

**3. Our Options**

If we notify you in writing within thirty (30) days after we receive your signed, sworn statement of loss, we may take all or part of the damaged Covered Property at a value that we will agree upon with you. If we choose, we may also repair the damaged Covered Property, or replace it with similar property.

**F. DEFINITIONS**

**1.** "Loss" means accidental loss or damage.

**2.** "Operations" means your business activities occurring at the described premises.

**3.** "Period of Restoration" means the period of time that:

    a. begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

    b. ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of Restoration" does not include any increased period required due to the enforcement of any law that regulates the construction, use or repair, or requires the tearing down, of any property.

The expiration date of this policy will not cut short the "period of restoration."

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**5.** "Replacement Cost" means the cost to repair or replace the covered property damaged or lost without deduction for depreciation. But, if you choose not to repair or replace the item, we will pay only the actual cash value of the item, or its repair, with proper deduction for depreciation.

C •11•02/08/10•MAC8182948-03

0104205     GREAT AMERICAN INS CO OF NY

ORIGINAL COPY

CM 00 01
(Ed. 09 04)

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## Loss Conditions

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. pay its chosen appraiser; and

2. bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties in the Event of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the loss or damage. Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the loss or damage occurred.

4. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

5. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

Copyright, ISO Properties, Inc., 2003
(Page 1 of 3)

C  *11*02/08/10*MAC8182948-03
                                                    ORIGINAL COPY
                           0104205    GREAT AMERICAN INS CO OF NY

9.  Immediately send us copies of any de-
    mands, notices, summonses or legal pa-
    pers received in connection with the claim
    or suit.

10. Cooperate with us in the investigation or
    settlement of the claim.

**D. Insurance Under Two or More Coverages**

If two or more of this policy's coverages
apply to the same loss or damage, we will not
pay more than the actual amount of the loss
or damage.

**E. Loss Payment**

1.  We will give notice of our intentions
    within 30 days after we receive the sworn
    proof of loss.

2.  We will not pay you more than your fi-
    nancial interest in the Covered Property.

3.  We may adjust losses with the owners of
    lost or damaged property if other than
    you. If we pay the owners, such payments
    will satisfy your claim against us for the
    owners' property. We will not pay the
    owners more than their financial interest in
    the Covered Property.

4.  We may elect to defend you against suits
    arising from claims of owners of prop-
    erty. We will do this at our expense.

5.  We will pay for covered loss or damage
    within 30 days after we receive the sworn
    proof of loss if you have complied with
    all the terms of this Coverage Part and:

    a.  we have reached agreement with you
        on the amount of the loss; or

    b.  an appraisal award has been made.

6.  We will not be liable for any part of a loss
    that has been paid or made good by oth-
    ers.

**F. Other Insurance**

1.  You may have other insurance subject to
    the same plan, terms, conditions and pro-
    visions as the insurance under this Cov-
    erage Part. If you do, we will pay our
    share of the covered loss or damage. Our
    share is the proportion that the applicable

Limit of Insurance under this Coverage
Part bears to the Limits of Insurance of all
insurance covering on the same basis.

2.  If there is other insurance covering the
    same loss or damage, other than that de-
    scribed in 1. above, we will pay only for
    the amount of covered loss or damage in
    excess of the amount due from that other
    insurance, whether you can collect on it or
    not. But we will not pay more than the
    applicable Limit of Insurance.

**G. Pair, Sets or Parts**

1.  **Pair or Set**

    In case of loss or damage to any part of a
    pair or set we may:

    a.  repair or replace any part to restore
        the pair or set to its value before the
        loss or damage; or

    b.  pay the difference between the value
        of the pair or set before and after the
        loss or damage.

2.  **Parts**

    In case of loss or damage to any part of
    Covered Property consisting of several
    parts when complete, we will only pay for
    the value of the lost or damaged part.

**H. Recovered Property**

If either you or we recover any property
after loss settlement, that party must give the
other prompt notice. At your option, the
property will be returned to you. You must
then return to us the amount we paid to you
for the property. We will pay recovery ex-
penses and the expenses to repair the recov-
ered property, subject to the Limit of Insur-
ance.

**I. Reinstatement of Limit After Loss**

The Limit of Insurance will not be reduced by
the payment of any claim, except for total
loss or damage of a scheduled item, in which
event we will refund the unearned premium on
that item.

Copyright, ISO Properties, Inc., 2003

C •11•02/08/10•MAC8182948-03
0104205

ORIGINAL COPY
GREAT AMERICAN INS CO OF NY

**J. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property.

2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

    a. someone insured by this insurance; or

    b. a business firm:

        (1) owned or controlled by you; or

        (2) that owns or controls you.

This will not restrict your insurance.

**General Conditions**

**A. Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. this Coverage Part;

2. the Covered Property;

3. your interest in the Covered Property; or

4. a claim under this Coverage Part.

**B. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

1. there has been full compliance with all the terms of this Coverage Part; and

2. the action is brought within 2 years after you first have knowledge of the direct loss or damage.

**D. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period, Coverage Territory**

We cover loss or damage commencing:

1. during the policy period shown in the Declarations; and

2. within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

1. the actual cash value of that property;

2. the cost of reasonably restoring that property to its condition immediately before loss or damage; or

3. the cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

Copyright, ISO Properties, Inc., 2003
(Page 3 of 3)

C •11•02/08/10•MAC8182948-03
0104205  GREAT AMERICAN INS CO OF NY

ORIGINAL COPY

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

BM 72 10 (Ed. 12 06)

Policy No. MAC  8-18-29-48 - 03

## EQUIPMENT BREAKDOWN COVERAGE PART DECLARATIONS NO. 1

| NAMED INSURED: | C.R. OPERATING CO., LINCOLN PLAZA OFFICE BUILDING, LLC | POLICY PERIOD: 11/01/09   to  11/01/10 |
|---|---|---|
| Identification Number: | | Issue Date: 11/10/2008 |

These coverages apply to any location listed on the Schedule of Locations for Equipment Breakdown Coverage Part Declarations No. 1.

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $ 10,000,000. |
| Property Damage | $ |
| Off Premises Property Damage | $        50,000. |
| Business Income | $ |
| Extra Expense | $ |
| Service Interruption | $ |
| Contingent Business Income | $        50,000. |
| Perishable Goods | $        50,000. |
| Data Restoration | $        50,000. |
| Demolition | $        50,000. |
| Ordinance or Law | $        50,000. |
| Expediting Expense | $        50,000. |
| Hazardous Substances | $        50,000. |
| Newly Acquired Locations | $    INCLUDED |

### Deductibles

Combined Coverage Policy Deductible:
Separate Coverage Policy Deductible: $ 5,000.

### Other Conditions

Extended Period of Restoration 5    days          Newly Acquired Locations 90   days

Total Equipment Breakdown Premium: $ 2,910.

FORMS AND ENDORSEMENTS applicable to this Coverage Part and made a part of this Policy at the time of issue are listed on the attached Forms and Endorsements Schedule, BM 88 01 (01/86).

BM 72 10 (Ed. 12/06) PRO                    (Page 1 of 1)

C *11*02/08/10*MAC8182948-03

ORIGINAL COPY

0104205   GREAT AMERICAN INS CO OF NY

BM 88 01 (Ed. 01 86)

**GREAT AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

### BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | | | |
|---|---|---|---|
| BM7211 | 12/06 | OK | EQUIPMENT BREAKDOWN COV FORM |
| BM7247 | 03/07 | OK | OK CHANGES-CANCELLATION/NONRENEWAL |

C *11*02/08/10*MAC8182948-03

0104205   GREAT AMERICAN INS CO OF NY

ORIGINAL COPY

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

BM 72 11
(Ed. 12 06)

## EQUIPMENT BREAKDOWN COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this Insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Section G. - Definitions. Examples are shown for illustrative purposes only and do not represent predicted or expected outcomes.

### A. Coverage

This Equipment Breakdown Coverage provides insurance for a Covered Cause of Loss as defined in A.1. below. In the event of a Covered Cause of Loss, we will pay for loss as described in A.2. below.

**1. Covered Cause of Loss - "Accident"**

The Covered Cause of Loss for this Equipment Breakdown Coverage is an "accident." Without an "accident," there is no Equipment Breakdown Coverage.

a. "Accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

(1) mechanical breakdown, including rupture or bursting caused by centrifugal force;

(2) artificially generated electrical current, including electrical arcing, that damages electrical devices, appliances or wires;

(3) explosion, other than combustion explosion, of steam boilers, steam piping, steam engines or steam turbines;

(4) an event inside steam boilers, steam pipes, steam engines or steam turbines that damages such equipment;

(5) an event inside hot water boilers or other water heating equipment that damages such equipment; or

(6) bursting, cracking or splitting.

"Accident" does not include any condition or event listed in Definition G.1.b.

b. "Covered Equipment," means the following:

(1) Unless specified otherwise in the Declarations:

(a) equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

(b) equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

(2) Except as specifically provided for under Off Premises Property Damage, Service Interruption, Contingent Business Income and paragraph (2) of Perishable Goods, such equipment must be at a location described in the Declarations and must be owned or leased by you or operated under your control.

Includes copyrighted material of ISO Properties, Inc., with its permission.

C *11*02/08/10*MACB182948-03

0104205    GREAT AMERICAN INS CO OF NY

"Covered equipment" does not include any property listed in Definition G.8.b.

## 2. Coverages Provided

This section lists the coverages that may apply in the event of an "accident." Each coverage is subject to a specific limit as shown in the Declarations. See paragraph C.2. for details.

These coverages apply only to the direct result of an "accident." For each coverage, we will pay only for that portion of the loss, damage or expense that is solely attributable to the "accident."

### a. Property Damage

We will pay for physical damage to "covered property" that is at a location indicated in the Declarations at the time of the "accident."

### b. Off Premises Property Damage

If you have transportable "covered equipment" that, at the time of the "accident," is within the Coverage Territory, but is not:

(1) at a location indicated in the Declarations; or

(2) at any other location owned or leased by you,

we will pay for physical damage to such "covered equipment."

### c. Business Income

(1) We will pay your actual loss of "business income" during the "period of restoration" that results directly from the necessary total or partial interruption of your business.

(2) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they

do not exceed the amount of loss that otherwise would have been payable under this coverage.

(3) We will consider the actual experience of your business before the "accident" and the probable experience you would have had without the "accident" in determining the amount of our payment.

### d. Extra Expense

We will pay the reasonable and necessary "extra expense" to operate your business during the "period of restoration."

### e. Service Interruption

We will pay for your loss and expense as defined under Business Income Coverage and Extra Expense Coverage that is the result of an "interruption of service."

### f. Contingent Business Income

We will pay for your loss and expense as defined under Business Income and Extra Expense Coverages that results from an "interruption of supply."

### g. Perishable Goods

(1) We will pay for physical damage to "perishable goods" due to "spoilage."

(2) We will also pay for physical damage to "perishable goods" due to "spoilage" that is the result of an "interruption of service."

(3) We will also pay for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

(4) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they

Includes copyrighted material of ISO Properties, Inc., with its permission.

BM 72 11 (Ed. 12/06) XS          (Page 2 of 23)

do not exceed the amount of loss that otherwise would have been payable under this coverage.

**h. Data Restoration**

(1) We will pay for your reasonable and necessary cost to research, replace or restore lost "data."

(2) We will also pay for your loss and expense as defined under Business Income Coverage and Extra Expense Coverage that is the result of h.(1) above, if such coverage is otherwise applicable under this Policy. This coverage is included within the subject to your Data Restoration limit.

**i. Demolition**

(1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:

(a) requires the demolition of a building that is otherwise reparable;

(b) is in force at the time of the "accident"; and

(c) is not addressed under Hazardous Substances Coverage.

(2) We will pay for the following additional costs to comply with such ordinance or law:

(a) your actual and necessary cost to demolish and clear the site of the undamaged parts of the building; and

(b) your actual and necessary cost to reconstruct the undamaged parts of the building.

(3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown

Coverage had no such ordinance or law been in force at the time of the "accident."

(4) We will also pay for your loss and expense as defined under Business Income Coverage and Extra Expense Coverage that is the result of i.(1) above, if such coverage is otherwise applicable under this Policy. This coverage is included within and subject to your Demolition limit.

**j. Ordinance or Law**

(1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:

(a) regulates the construction or repair of buildings, including "building utilities";

(b) is in force at the time of the "accident"; and

(c) is not addressed under Demolition Coverage or Hazardous Substances Coverage.

(2) We will pay for the following additional costs to comply with such ordinance or law:

(a) your actual and necessary cost to repair the damaged portions of the building;

(b) your actual and necessary cost to reconstruct the damaged portions of the building; and

(c) your actual and necessary cost to bring undamaged portions of the building into compliance with the ordinance or law.

(3) As used in this coverage, additional costs mean those beyond what would have been payable

Includes copyrighted material of ISO Properties, Inc., with its permission.

BM 72 11 (Ed. 12/06) XS                    (Page 3 of 23)

C •11•02/08/10•MAC8182948-03          ORIGINAL COPY
0104205     GREAT AMERICAN INS CO OF NY

under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the "accident."

(4) We will also pay for your loss and expense as defined under Business Income Coverage and Extra Expense Coverage that is the result of j.(1) above, if such coverage is otherwise applicable under this Policy. This coverage is included within and subject to your Ordinance or Law limit.

k. Expediting Expenses

With respect to your damaged "covered property," we will pay the reasonable extra cost to:

(1) make temporary repairs; and

(2) expedite permanent repairs or permanent replacement.

l. Hazardous Substances

(1) We will pay for the additional cost to repair or replace "covered property" because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in Perishable Goods, A.2.g.(3).

(2) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

(3) We will also pay for your loss and expense as defined under Business Income Coverage and Extra Expense Coverage that is the result of l.(1) above, if such coverage is otherwise applicable

under this Policy. This coverage is included within and subject to your Hazardous Substances limit.

m. Newly Acquired Locations

(1) You will notify us promptly of any newly acquired location that you have purchased or leased during the policy period.

(2) All coverages applicable to any scheduled location under this Equipment Breakdown Coverage are extended to a newly acquired location that you have purchased or leased during the policy period.

(3) This coverage begins at the time you acquire the property. As respects newly constructed properties, we will only consider them to be acquired by you when you have fully accepted the completed project.

(4) This coverage ends when any of the following first occurs:

(a) this Policy expires;

(b) the number of days specified in the Declarations for this Coverage expires after you acquire the location;

(c) the location is incorporated into the regular coverage of this Policy; or

(d) the location is incorporated into the regular coverage of another Equipment Breakdown Policy you have.

(5) If limits or deductibles vary by location, the highest limits and deductibles will apply to newly acquired locations. However, the most we will pay for loss, damage or expense arising from any "one accident" is the amount shown as the Newly Acquired Locations limit in the Declarations.

Includes copyrighted material of ISO Properties, Inc., with its permission.

(6) We will charge you additional premium for newly acquired locations from the date you acquire the property.

**n. Course of Construction**

This coverage is automatically included and does not need to be indicated in the Declarations.

(1) You will notify us promptly of any expansion or rehabilitation of any location described in the Declarations.

(2) All coverages applicable to any location described in the Declarations are extended to an expansion or rehabilitation of that location.

(3) This coverage begins at the time you begin the expansion or rehabilitation project.

(4) We will charge you additional premium for newly acquired equipment from the date the equipment is installed.

**B. Exclusions**

We will not pay for any excluded loss, damage or expense, even though any other cause or event contributes concurrently or in any sequence to the loss, damage or expense.

1. We will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from an "accident."

**a. Fire and Explosion**

(1) Fire, including smoke from a fire.

(2) Combustion explosion. This includes, but is not limited to, a combustion explosion of any steam boiler or other fired vessel.

(3) Any other explosion, except as specifically provided in A.1.a.(3).

**b. Ordinance or Law**

The enforcement of, or change in, any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operation, construction or installation, except as specifically provided in A.2.i., j. and l. (Demolition, Ordinance or Law and Hazardous Substances Coverages).

**c. Earth Movement**

Earth movement, whether natural or human-made, including but not limited to earthquake, shock, tremor, subsidence, landslide, rock fall, earth sinking, sinkhole collapse or tsunami.

**d. Nuclear Hazard**

Nuclear reaction, detonation or radiation, or radioactive contamination, however caused.

**e. War and Military Action**

(1) war, including undeclared or civil war;

(2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) insurrection, rebellion, revolution, usurped power, political violence or action taken by governmental authority in hindering or defending against any of these.

**f. Water**

(1) flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) mudslide or mudflow; or

(3) water that backs up or overflows from a sewer, drain or sump.

C *11*02/08/10*MACB182948-03                                    ORIGINAL COPY
                        0104205      GREAT AMERICAN INS CO OF NY

However, if electrical "covered equipment" requires drying out because of the above, we will pay for the amount you actually expend to dry out such equipment, subject to the applicable Property Damage limit and Direct Coverage deductible. We will not pay more than the Actual Cash Value of the affected electrical "covered equipment."

We will not pay to replace such equipment or for any other loss, damage or expense.

g. Failure to Protect Property

Your failure to use all reasonable means to protect "covered property" from damage following an "accident."

h. Fines

Fine, penalty or punitive damage.

i. Mold

Mold, fungus, mildew or yeast, including any spores or toxins created or produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean-up, remediation, containment, removal or abatement of such mold, fungus, mildew, yeast spores or toxins. However, this exclusion does not apply to "spoilage" of personal property that is "perishable goods" to the extent that such "spoilage" is covered under Perishable Goods Coverage.

j. Deliberate Acts

The deliberate act of any person to cause damage or harm, including but not limited to vandalism, malicious mischief or sabotage.

2. We will not pay for an "accident" caused by or resulting from any of the following causes of loss:

a. Lightning.

b. Windstorm or Hail. However, this exclusion does not apply when:

(1) "covered equipment" located within a building or structure suffers an "accident" that results from windblown rain, snow, sand or dust; and

(2) the building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

c. Collision or any physical contact caused by a "vehicle." This includes damage by objects falling from aircraft. However, this exclusion does not apply to any unlicensed "vehicles" which you own or which are operated in the course of your business.

d. Riot or Civil Commotion.

e. Leakage or discharge of any substance from an automatic sprinkler system, including collapse of a tank that is part of the system.

f. Volcanic Action.

g. An electrical insulation breakdown test.

h. A hydrostatic, pneumatic or gas pressure test.

i. Water or other means intended to extinguish a fire, even when such an attempt is unsuccessful.

j. Elevator collision.

3. We will not pay for an "accident" caused by or resulting from any of the following perils, if such peril is a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this Policy.

a. Falling Objects.

b. Weight of Snow, Ice or Sleet.

C •11•02/08/10•MAC8182948-03
0104205

ORIGINAL COPY
GREAT AMERICAN INS CO OF NY

c. Water Damage, meaning discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance containing water or steam.

d. Collapse.

e. Breakage of Glass.

f. Freezing caused by cold weather.

g. Discharge of molten material from equipment, including the heat from such discharged material.

4. Exclusions 2. and 3. do not apply if all of the following are true:

   a. the excluded peril occurs away from any location described in the Declarations and causes an electrical surge or other electrical disturbance;

   b. such surge or disturbance is transmitted through utility service transmission lines to a described location;

   c. at the described location, the surge or disturbance results in an "accident" to "covered equipment" that is owned or operated under the control of you or your landlord; and

   d. the loss, damage or expense caused by such surge or disturbance is not a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this Policy.

5. With respect to Business Income, Extra Expense and Service Interruption Coverages, we will also not pay for:

   a. loss associated with business that would not or could not have been carried on if the "accident" had not occurred;

   b. loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business;

c. that part of any loss that extends beyond or occurs after the "period of restoration." This includes, but is not limited to:

   (1) "business income" that would have been earned after the "period of restoration," even if such loss is the direct result of the suspension, lapse or cancellation of a contract during the "period of restoration"; and

   (2) "extra expense" to operate your business after the "period of restoration," even if such loss is contracted for and paid during the "period of restoration."

d. any increase in loss resulting from an agreement between you and your customer or supplier. This includes, but is not limited to, contingent bonuses or penalties, late fees, demand charges, demurrage charges and liquidated damages.

6. With respect to Off Premises Property Damage Coverage, Service Interruption Coverage, Contingent Business Income Coverage and paragraph (2) of Perishable Goods Coverage, we will also not pay for an "accident" caused by or resulting from any of the perils listed in Exclusion 3. above, whether or not such peril is a covered cause of loss under another coverage part or policy of insurance you have.

7. With respect to Data Restoration Coverage, we will also not pay to reproduce:

   a. software programs or operating systems that are not commercially available; or

   b. "data" that is obsolete, unnecessary or useless to you.

8. With respect to Demolition and Ordinance or Law Coverages, we will also not pay for:

   a. increased demolition or reconstruction costs until they are actually incurred; or

C *11*02/08/10*MAC8182948-03
ORIGINAL COPY
0104205    GREAT AMERICAN INS CO OF NY

b. loss due to any ordinance or law that:

(1) you were required to comply with before the loss, even if the building was undamaged; and

(2) you failed to comply with;

whether or not you were aware of such non-compliance.

## C. Limits of Insurance

Any payment made under this Equipment Breakdown Coverage will not be increased if more than one insured is shown in the Declarations or if you are comprised of more than one legal entity.

### 1. Equipment Breakdown Limit

The most we will pay for loss, damage or expense arising from any "one accident" is the amount shown as the Equipment Breakdown Limit in the Declarations.

### 2. Coverage Limits

a. The limit of your insurance under each of the coverages listed in A.2. from loss, damage or expense arising from any "one accident" is the amount indicated for that coverage in the Declarations. These limits are a part of, and not in addition to, the Equipment Breakdown Limit. If an amount of time is shown, coverage will continue for no more than that amount of time immediately following the "accident." If a coverage is shown as "Included," that coverage is provided up to the remaining amount of the Equipment Breakdown Limit. If no limit is shown in the Declarations for a coverage, or if a coverage is shown as Excluded in the Declarations, that coverage will be considered to have a limit of $0.

b. If two or more coverage limits apply to the same loss or portion of a loss, we will pay only the smallest of the applicable limits for that loss or portion of the loss. This means that if:

(1) you have a loss under one of the coverages listed in A.2.; and

(2) all or part of the loss is not covered because the applicable coverage is Excluded or has a limit that is less than the amount of your loss,

we will not pay the remaining amount of such loss under any other coverage.

### Example 1

Property Damage Limit: $7,000,000

Business Income Limit: $1,000,000

Newly Acquired Locations Limit: $500,000

There is an "accident" at a newly acquired location that results in a Property Damage loss of $200,000 and a Business Income loss of $800,000.

We will pay $500,000, because the entire loss is subject to the Newly Acquired Locations Limit of $500,000.

### Example 2

Property Damage Limit: $7,000,000

Business Income Limit: $500,000

Hazardous Substances Limit: $25,000

There is an "accident" that results in a loss of $100,000. If no "hazardous substance" had been involved, the property damage loss would have been $10,000 and the business income loss would have been $20,000. The presence of the "hazardous substance" increased the loss by $70,000 (increasing the clean up and repair costs by $30,000 and increasing the business income loss by $40,000).

We will pay $55,000 ($10,000 property damage plus $20,000 business income plus $25,000 hazardous substances).

## D. Deductibles

### 1. Deductibles for Each Coverage

a. Unless the Declarations indicate that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

Includes copyrighted material of ISO Properties, Inc., with its permission.

C #11#02/08/10#MAC8182948-03
0104205

ORIGINAL COPY
GREAT AMERICAN INS CO OF NY

b. We will not pay for loss, damage or expense under any coverage until the amount of the covered loss or damage exceeds the deductible amount indicated for that coverage in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit indicated in the Declarations.

c. If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

d. The following applies when a deductible is expressed as a function of the horsepower rating of a refrigerating or air conditioning system. If more than one compressor is used with a single system, the horsepower rating of the largest motor or compressor will determine the horsepower rating of the system.

2. **Direct and Indirect Coverages**

a. Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Declarations.

b. Unless more specifically indicated in the Declarations:

(1) Indirect Coverages Deductibles apply to Business Income and Extra Expense loss, regardless of where such coverage is provided in this Equipment Breakdown Coverage; and

(2) Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this Equipment Breakdown Coverage.

**Example**

An "accident" results in covered losses as follows:

$100,000 Total Loss (all applicable coverages)

$35,000 Business Income Loss (including $2,000 of business income loss payable under Data Restoration Coverage)

$5,000 Extra Expense Loss

In this case, the Indirect Coverages loss totals $40,000 before application of the Indirect Coverage Deductible. The Direct Coverages loss totals the remaining $60,000 before application of the Direct Coverage Deductible.

3. **Application of Deductibles**

a. **Dollar Deductibles**

We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable deductible or deductibles shown in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible or deductibles, subject to the applicable limits shown in the Declarations.

b. **Time Deductibles**

If a time deductible is shown in the Declarations, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

c. **Multiple of Average Daily Value (ADV) Deductibles**

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the "business income" that would have been earned during the period of interruption had no "accident" occurred, divided by the number of working days in that period. The ADV applies to the "business income" value of the entire location, whether or not the loss affects the entire location. If more

C ·11·02/08/10·MAC8182948-03                                    ORIGINAL COPY
              0104205      GREAT AMERICAN INS CO OF NY

than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."

The number indicated in the Declarations will be multiplied by the ADV as determined above. The result will be used as the applicable deductible.

**Example**

Business is interrupted, partially or completely, for 10 working days. If there had been no "accident," the total "business income" at the affected location for those 10 working days would have been $5,000. The Indirect Coverages Deductible is 3 times ADV.

$5,000/10 = $500 ADV

3 X $500 = $1,500 Indirect Coverages Deductible

**d. Percentage of Loss Deductibles**

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated Minimum Deductible, the Minimum Deductible will be the applicable deductible.

**E. Loss Conditions**

The following conditions apply:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Brands and Labels**

If branded or labeled merchandise that is "covered property" is damaged by an "accident," but retains a salvage value, you may, at your expense:

a. stamp the word Salvage on the merchandise or its containers if the stamp will not physically damage the merchandise; or

b. remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

We will pay for any reduction in value of the salvage merchandise resulting from either of these two actions, subject to all applicable limits.

If a Brands and Labels Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

**3. Coinsurance – Business Income Coverage**

a. Unless otherwise shown in the Declarations, Business Income Coverage is subject to coinsurance. This means that we will not pay the full amount of any "business income" loss if the "business income actual annual value" is greater than the "business income estimated annual value" at the affected location at the time of the "accident." Instead, we will determine the most we will pay using the following steps:

(1) divide the "business income estimated annual value" by the "business income actual annual value" at the time of the "accident";

(2) multiply the total amount of the covered loss of "business income" by the amount determined in paragraph (1) above;

(3) subtract the applicable deductible from the amount determined in paragraph (2) above;

The resulting amount, or the Business Income Limit, whichever is less, is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

ORIGINAL COPY

C •11•02/08/10•MAC8182948•03
0104205   GREAT AMERICAN INS CO OF NY

**b.** Coinsurance applies separately to each insured location.

**c.** If you report a single "business income estimated annual value" for more than one location, without providing information on how that amount should be distributed among the locations, we will distribute the amount evenly among all applicable locations.

**Example 1 (Underinsurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $100,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $100,000/$200,000 = .5

Step 2: $40,000 X .5 = $20,000

Step 3: $20,000 − $5,000 = $15,000

The total "business income" loss recovery, after deductible, would be $15,000. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

We will also charge you an additional premium in recognition of the actual "business income annual value."

**Example 2 (Adequate Insurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $200,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $200,000/$200,000 = 1

Step 2: $40,000 X 1 = $40,000

Step 3: $40,000 − $5,000 = $35,000

The total "business income" loss recovery, after deductible, would be $35,000.

**4. Coinsurance - Coverages Other Than Business Income**

Coverages other than Business Income may be subject to coinsurance if so indicated in the Declarations. If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of the property subject to the coverage at the time of the "accident" times the Coinsurance percentage shown for it in the Declarations is greater than the applicable limit.

Instead, we will determine the most we will pay using the following steps:

**(1)** multiply the value of the property subject to the coverage at the time of the "accident" by the Coinsurance Percentage;

**(2)** divide the applicable limit by the amount determined in step (1);

**(3)** multiply the total amount of loss, before the application of any deductible, by the amount determined in step (2); and

**(4)** subtract the deductible from the amount determined in step (3).

We will pay the amount determined in step (4) or the applicable limit, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

C •11•02/08/10•MAC8182948•03
0104205

ORIGINAL COPY
GREAT AMERICAN INS CO OF NY

b. Coinsurance applies separately to each insured location.

**Example 1 (Underinsurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $200,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods Coverage resulting from the "accident" is $60,000.

The Perishable Goods Deductible is $5,000.

Step 1: $200,000 X 80% = $160,000

Step 2: $100,000/$160,000 = .625

Step 3: $60,000 X .625 = $37,500

Step 4: $37,500 − $5,000 = $32,500

The total Perishable Goods loss recovery, after deductible, would be $32,500. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 2 (Adequate Insurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $100,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods Coverage resulting from the "accident" is $60,000.

The Perishable Goods Deductible is $5,000.

Step 1: $100,000 X 80% = $80,000

Step 2: $100,000/$80,000 = 1.25

Coinsurance does not apply.

Step 3: $60,000 − $5,000 = $55,000

The total Perishable Goods loss recovery, after deductible, would be $55,000.

**5. Defense**

We have the right, but are not obligated, to defend you against suits arising from claims of owners of property in your care, custody or control. When we do this, it will be at our expense.

**6. Duties in the Event of Loss or Damage**

You must see that the following are done in the event of loss or damage:

a. Give us prompt notice of the loss or damage, including a description of the property involved.

b. You must reduce your loss, damage or expense, if possible, by:

(1) protecting property from further damage. We will not pay for your failure to protect property, as stated in exclusion B.1.g.;

(2) resuming business, partially or completely at the location of loss or at another location;

(3) making up lost business within a reasonable amount of time. This includes working extra time or overtime at the location of loss or at another location. The reasonable amount of time does not necessarily end when the operations are resumed;

(4) using merchandise or other property available to you;

(5) using the property or services of others; and

(6) salvaging the damaged property.

c. Allow us a reasonable time and opportunity to examine the property and premises before repair or replacement is undertaken or physical evidence of the "accident" is removed. But you

Includes copyrighted material of ISO Properties, Inc., with its permission.

BM 72 11 (Ed. 12/06) XS                              (Page 12 of 23)

C *11*02/08/10*MAC8182948-03
0104205

ORIGINAL COPY
GREAT AMERICAN INS CO OF NY

must take whatever measures are necessary for protection from further damage.

d. Make no statement that will assume any obligation or admit any liability, for any loss, damage or expense for which we may be liable, without our consent.

e. Promptly send us any legal papers or notices received concerning the loss, damage or expense.

f. As often as may be reasonably required, permit us to inspect your property, premises and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

g. If requested, permit us to examine you and any of your agents, employees and representatives under oath. We may examine any insured under oath while not in the presence of any other insured. Such examination:

(1) may be at any time reasonably required;

(2) may be about any matter relating to this insurance, your loss, damage or expense, or your claim, including, but not limited to, your books and records; and

(3) may be recorded by us by any methods we choose.

h. Send us a signed, sworn proof of loss containing the information we request. You must do this within 60 days after our request.

i. Cooperate with us in the investigation and settlement of the claim.

7. **Errors and Omissions**

a. We will pay your loss covered by this Equipment Breakdown Coverage if such loss is otherwise not payable solely because of any of the following:

(1) any error or unintentional omission in the description or location of property as insured under this Policy;

(2) any failure through error to include any premises owned or occupied by you at the inception of this Policy; or

(3) any error or unintentional omission by you that results in cancellation of any premises insured under this Policy.

b. No coverage is provided as a result of any error or unintentional omission by you in the reporting of values or the coverage you requested.

c. It is a condition of this coverage that such errors or unintentional omissions shall be reported and corrected when discovered. The policy premium will be adjusted accordingly to reflect the date the premises should have been added had no error or omission occurred.

d. If an Errors and Omissions Limit is shown in the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

8. **Proving Your Loss**

It is your responsibility, at your own expense, to provide documentation to us:

a. demonstrating that the loss, damage or expense is the result of an "accident" covered under this Equipment Breakdown Coverage; and

b. calculating the dollar amount of the loss, damage and expense that you claim is covered.

Your responsibility in 8.a. above is without regard to whether or not the possible "accident" occurred at your premises or involved your equipment.

C  *11*02/08/10*MAC8182948-03
0104205    GREAT AMERICAN INS CO OF NY

ORIGINAL COPY

**9. Salvage and Recoveries**

When, in connection with any loss under this Equipment Breakdown Coverage, any salvage or recovery is received after the payment for such loss, the amount of the loss shall be refigured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

**10. Valuation**

We will determine the value of "covered property" as follows:

a. Except as specified otherwise, our payment for damaged "covered property" will be the smallest of:

   (1) the cost to repair the damaged property;

   (2) the cost to replace the damaged property on the same site; or

   (3) the amount you actually spend that is necessary to repair or re-place the damaged property.

b. The amount of our payment will be based on the most cost-effective means to replace the function, capac-ity and remaining useful life of the damaged property. This may include the use of generic, used or recondi-tioned parts, equipment or property.

c. Except as described in d. below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

d. **Environmental, Safety and Efficien-cy Improvements**

If "covered equipment" requires re-placement due to an "accident," we will pay your additional cost to replace with equipment that we agree is better for the environment, safer for people

or more energy efficient than the equipment being replaced, subject to the following conditions:

   (1) we will not pay more than 125% of what the cost would have been to replace with like kind and quality;

   (2) we will not pay to increase the size or capacity of the equipment;

   (3) this provision only applies to Property Damage Coverage;

   (4) this provision does not increase any of the applicable limits;

   (5) this provision does not apply to any property valued on an Actual Cash Value basis; and

   (6) this provision does not apply to the replacement of component parts.

e. The following property will be valued on an Actual Cash Value basis:

   (1) any property that does not cur-rently serve a useful or necessary function for you;

   (2) any "covered property" that you do not repair or replace within 24 months after the date of the "ac-cident"; and

   (3) any "covered property" for which Actual Cash Value coverage is specified in the Declarations.

Actual Cash Value includes deductions for depreciation.

f. If any one of the following conditions is met, property held for sale by you will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that oth-erwise would have applied:

   (1) the property was manufactured by you;

Includes copyrighted material of ISO Properties, Inc., with its permission.

(2) the sales price of the property is less than the replacement cost of the property; or

(3) you are unable to replace the property before its anticipated sale.

g. Except as specifically provided for under Data Restoration coverage, "data" and "media" will be valued on the following basis:

(1) For mass-produced and commercially available software, at the replacement cost.

(2) For all other "data" and "media," at the cost of blank "media" for reproducing the records. We will not pay for "data" representing financial records based on the face value of such records.

h. Air conditioning or refrigeration equipment that utilizes a refrigerant containing CFC (chlorofluorocarbon) substances will be valued at the cost to do the least expensive of the following:

(1) repair or replace the damaged property and replace any lost CFC refrigerant;

(2) repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(3) replace the system with one using a non-CFC refrigerant.

In determining the least expensive option, we will include any associated Business Income or Extra Expense loss. If option (2) or (3) is more expensive than (1), but you wish to retrofit or replace anyway, we will consider this better for the environment and therefore eligible for valuation under paragraph d., **Environmental, Safety and Efficiency Improvements**. In such case, E.10.d.(1) is amended to read: "We will not pay more than 125% of

what the cost would have been to repair or replace with like kind and quality."

**F. Additional Conditions**

The following conditions apply in addition to the Loss Conditions:

1. **Additional Insured**

If a person or organization is designated in this Equipment Breakdown Coverage as an additional insured, we will consider them to be an insured under this Equipment Breakdown Coverage only to the extent of their interest in the "covered property."

2. **Bankruptcy**

The bankruptcy or insolvency of you or your estate will not relieve you or us of any obligation under this Equipment Breakdown Coverage.

3. **Cancellation**

a. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

b. We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this Policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named

C  *11*02/08/10*MAC8182948-03
0104205   GREAT AMERICAN INS CO OF NY

ORIGINAL COPY

Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

### 4. Changes

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

### 5. Concealment, Misrepresentation or Fraud

We will not pay for any loss and coverage will be void if you or any additional insured at any time:

a. intentionally cause or allow loss, damage or expense in order to collect on insurance; or

b. intentionally conceal or misrepresent a material fact concerning:

  (1) this Equipment Breakdown Coverage;

  (2) the "covered property";

  (3) your interest in the "covered property"; or

  (4) a claim under this Equipment Breakdown Coverage.

### 6. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this Policy at any time during the policy period and up to three years afterward.

### 7. Inspections and Surveys

a. We have the right to:

  (1) make inspections and surveys at any time;

  (2) give you reports on the conditions we find; and

  (3) recommend changes.

b. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

  (1) are safe or healthful; or

  (2) comply with laws, regulations, codes or standards.

c. Paragraphs a. and b. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### 8. Jurisdictional Inspections

It is your responsibility to comply with any state or municipal boiler and pressure vessel regulations. If any "covered equipment" that is "covered property" requires inspection to comply with such regulations, at your option we agree to perform such inspection.

### 9. Legal Action Against Us

No one may bring a legal action against us under this Equipment Breakdown Coverage unless:

a. there has been full compliance with all the terms of this Equipment Breakdown Coverage; and

b. the action is brought within two years after the date of the "accident"; or

c. we agree in writing that you have an obligation to pay for damage to "covered property" of others or until the

C *11*02/08/10*MAC8182948-03          ORIGINAL COPY
0104205    GREAT AMERICAN INS CO OF NY

amount of that obligation has been de-
termined by final judgment or arbitra-
tion award. No one has the right under
this Policy to bring us into an action to
determine your liability.

**10. Liberalization**

If we adopt any standard form revision
for general use that would broaden the
coverage under this Equipment Breakdown
Coverage without additional premium, the
broadened coverage will apply to this
Equipment Breakdown Coverage com-
mencing on the date that such revision
becomes effective in the jurisdiction
where the "accident" occurs.

**11. Loss Payable**

a. We will pay you and the loss payee
shown in the Declarations for loss
covered by this Equipment Breakdown
Coverage, as interests may appear. The
insurance covers the interest of the
loss payee unless the loss results from
conversion, secretion or embezzle-
ment on your part or on the part of
the loss payee.

b. We may cancel the Policy as allowed
by the Cancellation Condition. Can-
cellation ends this agreement as to the
loss payee's interest. If we cancel, we
will mail you and the loss payee the
same advance notice.

c. If we make any payment to the loss
payee, we will obtain their rights
against any other party.

**12. Maintaining Your Property and Equip-
ment**

It is your responsibility to appropriately
maintain your property and equipment. We
will not pay your costs to maintain, op-
erate, protect or enhance your property
or equipment, even if such costs are to
comply with our recommendations or
prevent loss, damage or expense that
would be covered under this Policy.

**13. Mortgage Holders**

a. The term mortgage holder includes
trustee.

b. We will pay for direct damage to
"covered property" due to an "acci-
dent" to "covered equipment" to you
and each mortgage holder shown in
the Declarations in their order of pre-
cedence, as interests in the "covered
property" may appear.

c. The mortgage holder has the right to
receive loss payment even if the
mortgage holder has started foreclo-
sure or similar action on the "covered
property."

d. If we deny your claim because of your
acts or because you have failed to
comply with the terms of this Equip-
ment Breakdown Coverage, the mort-
gage holder will still have the right to
receive loss payment, provided the
mortgage holder does all of the fol-
lowing:

(1) pays any premium due under this
Equipment Breakdown Coverage
at our request if you have failed
to do so;

(2) submits a signed, sworn proof of
loss within 60 days after receiv-
ing notice from us of your failure
to do so;

(3) has notified us of any change in
ownership or material change in
risk known to the mortgage hold-
er; and

(4) has complied with all other terms
and conditions of this Policy.

All of the terms of this Equipment
Breakdown Coverage will then apply
directly to the mortgage holder.

e. If we pay the mortgage holder for any
loss and deny payment to you because
of your acts or because you have
failed to comply with the terms of this
Equipment Breakdown Coverage:

C •11•02/08/10•MAC8182948-03                                ORIGINAL COPY
                0104205     GREAT AMERICAN INS CO OF NY

(1) the mortgage holder's right under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) the mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this Policy, we will give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this Policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this Policy.

h. If we suspend coverage, it will also be suspended as respects the mortgage holder. We will give written notice of the suspension to the mortgage holder.

**14. Other Insurance**

If there is other insurance that applies to the same loss, damage or expense, this Equipment Breakdown Coverage shall apply only as excess insurance after all other applicable insurance has been exhausted.

**15. Policy Period, Coverage Territory**

Under this Equipment Breakdown Coverage:

a. The "accident" must occur during the policy period, but expiration of the Policy does not limit our liability.

b. The "accident" must occur within the following Coverage Territory:

(1) the United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

**16. Premiums**

The first Named Insured shown in the Declarations:

a. is responsible for the payment of all premiums; and

b. will be the payee for any return premiums we pay.

**17. Privilege to Adjust with Owner**

In the event of loss, damage or expense involving property of others in your care, custody or control, we have the right to settle the loss, damage or expense with respect to such property with the owner of the property. Settlement with owners of that property will satisfy any claim of yours.

**18. Suspension**

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by delivering or mailing a written notice of suspension to:

a. your last known address; or

b. the address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment."

If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of

C *11*02/08/10*MAC8182948-03

0104205

suspension. But the suspension will be effective even if we have not yet made or offered a refund.

19. **Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

20. **Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Equipment Breakdown Coverage has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to an "accident."

b. After an "accident" only if, at time of the "accident," that party is one of the following:

(1) someone insured by this Policy; or

(2) a business firm:

(a) owned or controlled by you; or

(b) that owns or controls you.

G. **Definitions**

1. **"Accident"**

a. "Accident" is defined in A.1.a.

b. None of the following is an "accident," however caused and without regard to whether such condition or event is normal and expected or unusual and unexpected:

(1) depletion, deterioration, rust, corrosion, erosion, settling or wear and tear;

(2) any gradually developing condition;

(3) any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind;

(4) contamination by a "hazardous substance"; or

(5) misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

2. **"Boilers and Vessels"** means:

a. boilers;

b. steam piping;

c. piping that is part of a closed loop used to conduct heat from a boiler;

d. condensate tanks; and

e. unfired vessels which, during normal usage, operate under vacuum or pressure, other than the weight of contents.

This term does not appear elsewhere in this Coverage Form, but may appear in the Declarations.

3. **"Building Utilities"** means "covered equipment" permanently mounted on or in a building and used to provide any of the following services within the building: heating, ventilating, air conditioning, electrical power, hot water, elevator or es-

Includes copyrighted material of ISO Properties, Inc., with its permission.

C *11*02/08/10*MAC8182948-03

ORIGINAL COPY

0104205    GREAT AMERICAN INS CO OF NY

calator services, natural gas service or communications. "Building utilities" does not include personal property or equipment used in manufacturing or processing.

4. **"Buried Vessels or Piping"** means any piping or vessel buried or encased in the earth, concrete or other material, whether above or below grade, or in an enclosure which does not allow access for inspection and repair.

5. **"Business Income"** means the sum of:

   a. the Net income (net profit or loss before income taxes) that would have been earned or incurred; and

   b. continuing normal and necessary operating expenses incurred, including employee payroll.

6. **"Business Income Actual Annual Value"** means the "business income" for the current fiscal year that would have been earned had no "accident" occurred.

   In calculating the "business income actual annual value," we will take into account the actual experience of your business before the "accident" and the probable experience you would have had without the "accident."

7. **"Business Income Estimated Annual Value"** means the anticipated "business income" reported to us and shown in the Declarations. If no value is shown in the Declarations, the "business income estimated annual value" will be the most recent report of anticipated "business income" values on file with us.

8. **"Covered Equipment"**

   .a. "Covered Equipment" is defined in A.1.b.

   b. None of the following is "covered equipment":

      (1) structure, including but not limited to the structural portions of buildings and towers, scaffolding, and any air supported enclosure;

      (2) foundation;

   (3) cabinet, compartment, conduit or ductwork;

   (4) insulating or refractory material;

   (5) "buried vessels or piping";

   (6) waste, drainage or sewer piping;

   (7) piping, valves or fittings forming a part of a sprinkler or fire suppression system;

   (8) water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

   (9) "vehicle" or any equipment mounted on a "vehicle";

   (10) satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

   (11) dragline, excavation or construction equipment;

   (12) equipment manufactured by you for sale; or

   (13) "data."

9. **"Covered Property"**

   a. "Covered Property" means property that you own or property that is in your care, custody or control and for which you are legally liable. Such property must be at a location described in the Declarations except as provided under Off Premises Property Damage Coverage.

   b. None of the following is "covered property":

      (1) accounts, bills, currency, deeds or other evidences of debt, money, notes or securities;

      (2) fine arts, jewelry, furs or precious stones;

      (3) precious metal, unless forming a part of "covered equipment";

Includes copyrighted material of ISO Properties, Inc., with its permission.

C *11*02/08/10*MAC8182948-03            ORIGINAL COPY
           0104205    GREAT AMERICAN INS CO OF NY

(4) animals;

(5) contraband, or property in the course of illegal transportation or trade;

(6) land (including land on which the property is located), water, trees, growing crops or lawns; or

(7) shrubs or plants, unless held indoors for retail sale.

10. "Data" means information or instructions stored in digital code capable of being processed by machinery.

11. "Electrical Generating Equipment"

a. "Electrical Generating Equipment" means equipment which converts any other form of energy into electricity. This includes, but is not limited to, the following:

(1) boilers used primarily to provide steam for one or more turbine-generator units;

(2) turbine-generators (including steam, gas, water or wind turbines);

(3) engine-generators;

(4) fuel cells or other alternative electrical generating equipment;

(5) electrical transformers, switchgear and power lines used to convey the generated electricity; and

(6) associated equipment necessary for the operation of any of the equipment listed in (1) through (5) above.

b. "Electrical Generating Equipment" does not mean:

(1) elevator or hoist motors that generate electricity when releasing cable; or

(2) equipment intended to generate electricity solely on an emergency, back-up basis.

This term does not appear elsewhere in this Coverage Form, but may appear in the Declarations.

12. "Extra Expense" means the additional cost you incur to operate your business over and above the cost that you normally would have incurred to operate your business during the same period had no "accident" occurred.

13. "Hazardous Substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

14. "Interruption of Service"

a. "Interruption of Service" means a failure or disruption of the normal supply of any of the Covered Services listed in b. below, when such failure or disruption is caused by an "accident" to "covered equipment," subject to the conditions listed in c. through f. below.

b. Covered Services are electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks and data transmission.

c. The "covered equipment" must either be:

(1) owned by a company with whom you have a contract to supply you with one of the Covered Services; or

(2) used to supply you with one of the Covered Services and located within one mile of a location described in the Declarations.

d. If a Service Interruption Distance Limitation is indicated in the Declarations, the "covered equipment" suffering the

Includes copyrighted material of ISO Properties, Inc., with its permission.

C *11*02/08/10*MAC8182948-03
0104205          GREAT AMERICAN INS CO OF NY

ORIGINAL COPY

"accident" must be located within the indicated distance of any location described in the Declarations.

e.  Unless otherwise shown in the Declarations, no failure or disruption of service will be considered to qualify as an "interruption of service" until the failure or disruption exceeds 24 hours immediately following the "accident."

f.  "Interruption of Service" does not include any failure or disruption, whether or not arising from or involving an "accident," in which a supplier could have continued to provide service to the location but chose for any reason to reduce or discontinue service.

15.  "Interruption of Supply"

a.  "Interruption of Supply" means a failure or disruption of the normal supply of any of the Covered Contingencies listed below, when such failure or disruption is caused by an "accident" to "covered equipment" that is located at a Contingent Business Income supplier or receiver location indicated in the Declarations. If no Contingent Business Income supplier or receiver location is indicated in the Declarations, the "covered equipment" must be owned by a supplier from whom you have received the Covered Contingency for at least six months prior to the "accident" or a receiver to whom you have supplied the Covered Contingency for at least six months prior to the "accident."

b.  Covered Contingencies are raw materials, intermediate products, finished products, packaging materials and product processing services.

16.  "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

17.  "One Accident" means all "accidents" occurring at the same time from the same event.

If an "accident" causes other "accidents," all will be considered "one accident."

18.  "Ordinary Payroll" means the Payroll Expenses associated with all employees other than executives, department managers and employees under contract.

As used above, Payroll Expenses means all payroll, employee benefits directly related to payroll, FICA payments you pay, union dues you pay and workers compensation premiums.

"Ordinary payroll" does not include pensions or directors fees.

This term does not appear elsewhere in this Coverage Form, but may appear in the Declarations.

19.  "Period of Restoration" means the period of time that begins at the time of the "accident" and continues until the earlier of:

a.  the date the physical damage to "covered equipment" is repaired or replaced; or

b.  the date on which such damage could have been repaired or replaced with the exercise of due diligence and dispatch,

plus the number of days, if any, shown in the Declarations for Extended Period of Restoration.

20.  "Perishable Goods" means any "covered property" subject to deterioration or impairment as a result of a change of conditions, including but not limited to temperature, humidity or pressure.

21.  "Production Machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus.

This term does not appear elsewhere in this Coverage Form, but may appear in the Declarations.

C •11•02/08/10*MAC8182948•03

0104205

ORIGINAL COPY
GREAT AMERICAN INS CO OF NY

22. **"Spoilage"** means any detrimental change in state. This includes but is not limited to thawing of frozen goods, warming of refrigerated goods, freezing of fresh goods, solidification of liquid or molten material and chemical reactions to material in process.

23. **"Vehicle"** means any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

Includes copyrighted material of ISO Properties, Inc., with its permission.

BM 72 11 (Ed. 12/06) XS                    (Page 23 of 23)

C *11*02/08/10*MAC8182948-03                              ORIGINAL COPY
                              0104205    GREAT AMERICAN INS CO OF NY

**GREATAMERICAN.**  Administrative Offices
INSURANCE GROUP     580 Walnut Street
                    Cincinnati, Ohio 45202
                    Tel: 1-513-369-5000                 BM 72 47
                                                        (Ed. 03 07)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## OKLAHOMA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

EQUIPMENT BREAKDOWN COVERAGE FORM

A. Under F. Additional Conditions, paragraph 3. Cancellation, subparagraph b. is replaced by the following:

  b. We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    (2) 30 days before the effective date of cancellation if we cancel for any other reason.

  After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this Policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

    (a) nonpayment of premium;

    (b) discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

    (c) discovery of willful or reckless acts or omissions by you that increase any hazard insured against;

    (d) the occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

    (e) a violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

    (f) a determination by the Insurance Commissioner that the continuation of the Policy would place us in violation of the insurance laws of this state;

    (g) your conviction of a crime having as one of its necessary elements an act increasing any hazard insured against; or

    (h) loss of or substantial changes in applicable reinsurance.

B. Under F. Additional Conditions, the following are added and supersede any provisions to the contrary:

  1. Nonrenewal

    a. If we elect not to renew this Policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 45 days before:

      (1) the expiration date of this Policy; or

Includes copyrighted material of ISO Properties, Inc., with its permission.

BM 72 47 (Ed. 03/07) XS                 (Page 1 of 3)

C •11•02/08/10•MAC8182948-03

ORIGINAL COPY

0104205   GREAT AMERICAN INS CO OF NY

(2) an anniversary date of this Policy, if it is written for a term longer than one year or with no fixed expiration date.

b. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

c. If notice is mailed:

(1) It will be considered to have been given to the first Named Insured on the day it is mailed.

(2) Proof of mailing will be sufficient proof of notice.

d. If notice of nonrenewal is not mailed or delivered at least 45 days before the expiration date or an anniversary date of this Policy, coverage will remain in effect until 45 days after notice is given. Earned premium for such extended period of coverage will be calculated pro rata based on the rates applicable to the expiring policy.

e. We will not provide notice of nonrenewal if:

(1) we, or another company within the same insurance group, have offered to issue a renewal policy; or

(2) you have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

f. If we have provided the required notice of nonrenewal as described in 8.1.a. above, and thereafter extend the policy for a period of 90 days or less, we will not provide an additional nonrenewal notice with respect to the period of extension.

2. **Premium or Coverage Changes at Renewal**

a. If we elect to renew this Policy, we will give written notice of any premium increase, change in deductible, or re-

duction in limits or coverage, to the first Named Insured, at the last mailing address known to us.

b. Any such notice will be mailed or delivered to the first Named Insured at least 45 days before:

(1) the expiration date of this Policy; or

(2) an anniversary date of this Policy, if it is written for a term longer than one year or with no fixed expiration date.

c. If notice is mailed:

(1) It will be considered to have been given to the first Named Insured on the day it is mailed.

(2) Proof of mailing will be sufficient proof of notice.

d. If the first Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

e. If notice is not mailed or delivered at least 45 days before the expiration date or anniversary date of this Policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

(1) 45 days after notice is given; or

(2) the effective date of replacement coverage obtained by the Insured;

whichever occurs first.

If the first Named Insured then elects not to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.

BM 72 47 (Ed. 03/07) XS                    (Page 2 of 3)

C *11*02/08/10*MAC8182948-03

0104205

f. We will not provide notice of the fol-
lowing:

(1) changes in a rate or plan filed
pursuant to the Property and Ca-
sualty Competitive Loss Cost Rat-
ing Act applicable to an entire
class of business;

(2) changes which are based upon
the altered nature or extent of
the risk insured; or

(3) changes in policy forms filed with
or approved by the Insurance
Commissioner and applicable to
an entire class of business.

C. The Policy Period shown on the Declarations
Page attached to this Policy is amended to
provide that:

The effective date of coverage is 12:01 A.M.
standard time at the Named Insured's mailing
address.

Includes copyrighted material of ISO Properties, Inc., with its permission.

C •11•02/08/10•MAC8182948•03
0104205   GREAT AMERICAN INS CO OF NY

ORIGINAL COPY

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

## EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
### ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your Policy (including its endorsements). If there is any conflict between this Notice and the Policy (including its endorsements), the provisions of the policy (including its endorsements) shall prevail.

Carefully read your Policy, including the endorsements attached to your Policy.

This Notice provides information concerning the following new endorsement, which applies to your new or renewal policy being issued by us:

### Exclusion of Loss Due to Virus or Bacteria Endorsement CP 01 40 07 06.

This Endorsement makes an explicit statement regarding a risk that is not covered under your Commercial Property Insurance. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of including physical distress, illness or disease. The exclusion in this endorsement applies to all coverages provided by your Commercial Property Insurance, including (if any) property damage and business income coverages.

Includes copyrighted material of ISO Properties, Inc., 2006 with its permission

SDM-625 (Ed. 07/06) XS

C *11*02/08/10*MAC8182948-03    ORIGINAL COPY
0104205    GREAT AMERICAN INS CO OF NY

**GREAT**AMERICAN.
INSURANCE GROUP
Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

## EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
## ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your Policy (including its endorsements). If there is any conflict between this Notice and the Policy (including its endorsements), the provisions of the policy (including its endorsements) shall prevail.

Carefully read your Policy, including the endorsements attached to your Policy.

This Notice provides information concerning the following new endorsement, which applies to your new or renewal policy being issued by us:

**Exclusion of Loss Due to Virus or Bacteria Endorsement CP 01 40 07 06.**

This Endorsement makes an explicit statement regarding a risk that is not covered under your Commercial Property Insurance. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of including physical distress, illness or disease. The exclusion in this endorsement applies to all coverages provided by your Commercial Property Insurance, including (if any) property damage and business income coverages.

Includes copyrighted material of ISO Properties, Inc., 2006 with its permission

SDM-625 (Ed. 07/08) XS